677 So.2d 374 (1996)
Leonard GLOVER, Appellant,
v.
STATE of Florida, Appellee.
No. 95-1581.
District Court of Appeal of Florida, Fourth District.
July 10, 1996.
*375 Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Joan L. Greenberg, Assistant Attorney General, West Palm Beach, for appellee.
SHAHOOD, Judge.
Appellant, Leonard Glover, was convicted of three counts of aggravated battery with a firearm. In this appeal, appellant seeks reversal on several grounds. We find merit in the argument that the trial court erred in denying appellant's motion to suppress statements made to the police during the period appellant was held in custody.
After appellant was arrested, he was placed in an interrogation room for over an hour and a half without the benefit of Miranda warnings.[1] Although he repeatedly inquired as to why he had been arrested, his questions went unanswered by the police officers present. Even as appellant became increasingly agitated, the police officers refused to inform him of the allegations against him.
The trial court in denying appellant's motion to suppress, found as follows:
This is a question of credibility, and it is who do I believe? And I'm going to tell you why I believe Deputy Carmody. Deputy Carmody testified that he wasthe impression I got anyway or I received from him, was that they went into the room to do an interview. He was going to read him his rights and he stated that he didn't read the rights. He didn't read the rights because he didn't feel it was necessary since the defendant started speaking right away. And when I combined that with the question that I asked Detective Carmody, about whether this happens all the time, I kind of expected Detective Carmody to tell me that it does, that it happens fairly frequently, where the defendant just talks on.
I think if this was his way of doing things and I was getting the impression that maybe he did the functional equivalent of questioning, but it turned out that, no, it wasn't true, that he doesn't do this as functional equivalent of questioning. And that he does have to drag it out of other defendants.
Based on everything I have heard, I'm going to deny the defense's motion to suppress because, even though the defendant was in custody, and even though Miranda rights would have been required to have been read had there been questioning, that there was no questioning. There was not the functional equivalent of questioning and that the defendant was just talking *376 and that Deputy Carmody was just listening.
It is axiomatic that a trial court's ruling on a motion to suppress comes to the reviewing court clothed with the presumption of correctness; the reviewing court interprets the evidence and reasonable inferences and deductions therefrom in a manner most favorable to sustain the trial court's ruling. McNamara v. State, 357 So.2d 410 (Fla. 1978). It is the trial court which determines the credibility of the witnesses. State v. Brown, 592 So.2d 308, 310 (Fla. 3d DCA 1991). Those determinations of factual questions and resolutions of conflicting evidence are to be accepted by appellate courts and not disturbed on appeal. Id.
In this case, however, the trial court, ignored the United States Supreme Court's admonition in Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), where the court employed a broad and practical definition of "interrogation." The court stated:
[T]he term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.... A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation.
Innis, 446 U.S. at 300, 100 S.Ct. at 1689 (emphasis added); see also, Jones v. State, 497 So.2d 1268 (Fla. 3d DCA 1986) (interrogations under Miranda refers not only to express questions but also includes police conduct likely to induce incriminating responses).
The safeguards against self-incrimination established by Miranda apply to interrogation initiated by law enforcement officers after a person has been taken into custody. "`Interrogation' ... must reflect a measure of compulsion above and beyond that inherent in custody itself." Innis, 446 U.S. at 300, 100 S.Ct. at 1689. Moreover, "interrogation" includes not only express questioning but also its "functional equivalent," that is, "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301, 100 S.Ct. at 1689-90.
The issue in the instant case, then, is whether the conduct of Officers Black and Carmody rose to the level of interrogation or its functional equivalent. We answer that question in the affirmative and find that the police officers' conduct toward appellant was unduly protracted and evocative such that the atmosphere was tantamount to a custodial interrogation. See State v. Brown, 592 So.2d 308 (Fla. 3d DCA 1991). Accordingly, we reverse appellant's conviction because his statements made under those circumstances should have been suppressed.
Reversed and remanded.
STONE and GROSS, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)