711 So.2d 1176 (1998)
Oswaldo PALAZON, Appellant,
v.
STATE of Florida, Appellee.
No. 96-03267.
District Court of Appeal of Florida, Second District.
April 15, 1998.
Rehearing Denied May 26, 1998.
James Marion Moorman, Public Defender, Bartow, and Brad Permar, Assistant Public Defender, Clearwater, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Acting Chief Judge.
Oswaldo Palazon appeals his conviction and sentence for sexual battery.[1] He was sentenced as a habitual offender to twenty-five years' imprisonment, suspended after fifteen years with the remaining portion of the sentence to be served on probation. We reverse because we are unable to conclude that the prosecutor's improper closing argument was harmless error. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
The alleged victim in this case is a woman in her mid-twenties who claims that Mr. Palazon raped her on June 10, 1995, at 6 a.m., after his girlfriend fell asleep. Mr. Palazon's defense was that the act of sexual intercourse was consensual. His former girlfriend testified that she saw the alleged victim flirting with Mr. Palazon before she fell asleep, that she saw them lying together when she awoke, and that she pounded the victim in the face. The testimony of all three witnesses may be clouded by the fact that they had consumed significant quantities of alcohol and illegal substances in the hours preceding this event.
To establish that the sexual act was not consensual, the alleged victim produced a *1177 tampon nine days after the event, which she claimed had been lodged inside her body during the attack. The tampon had not been discovered during a physical examination by a nurse shortly after the alleged attack. The victim did not appear to be menstruating at the time of that examination, and she had not reported the tampon to the examining nurse. The State did not preserve this evidence after the victim had provided the tampon during discovery.
The nature of the case along with this evidence did not make for a pleasant trial. The defense portrayed the alleged victim as someone who manufactured false evidence, even though her motive to do so was far from clear. The State had to attack the credibility of Mr. Palazon's former girlfriend, whom it chose to call as its first witness. The credibility issues in this trial undoubtedly resulted in an emotionally charged atmosphere. Unfortunately, the prosecutor, Richard A. Ripplinger, did not restrain his emotions and the trial court did not sustain the defense's objections to Mr. Ripplinger's closing argument.
Mr. Ripplinger began his closing argument:
This case isn't about no stupid tampon. This isn't about [the victim's] personal hygiene habits. It's about that man, right there, taking that little, mousy little girl in the middle of the night, in a strange neighborhood and strange house, dragging her into his living room, running his mouth and teeth all over her body, shoving herher legs up in the air and shoving his penis into her repeatedly, eventually forcing that tampon back into her vaginal cavity.
....
What's the best he can do? Wellwell, you know, today you said you thought that the Defendant, before you fell asleep, was sitting on the couch; didn't you tell that other officer about a year ago he was sitting on a chair? That'sthat's the best he can do. After all these interviews, the uncontroverted testimony was that that girl was raped. She repeatedly said, no, no, no.
Mr. Yeazell: Objection, Your Honor
Mr. Ripplinger: All he said was it's okay.
The Court: What's your objection?
Mr. Yeazell: My objection is obviously this is completely overboard, flagrant behavior by the State Attorney and is completely inappropriate in this courtroom.
The Court: Objection overruled. But let's continue, Mr. Ripplinger.
Mr. Ripplinger: I apologize. I call them like I see them.
....
You know, maybe Mr. Yeazell would be, you know, a pretty tough rape victim. You know, he'd know what to do. He'd know he'd know how to scream, he'd know how to fight back.
Mr. Yeazell: Objection, Your Honor.
Mr. Ripplinger: He'd know how to jump out the window.
The Court: What's the objection?
Mr. Yeazell: My objection is that's improper argument. It's an attack on Defense counsel. It's completely inappropriate.
The Court: I don't think it's an attack. Objection overruled. Continue.
Mr. Ripplinger: Time and time again he's sitting there going over with this girl, you know, all the things that she could have done. It's pretty easy sitting back in his cushy law office, sitting in his chair, playing Monday-morning quarterback trying to think of all the things that could have been done or should have been done.
Mr. Ripplinger's statements amounted to an improper attack on defense counsel. See Redish v. State, 525 So.2d 928 (Fla. 1st DCA 1988) (concluding that prosecution's personal attack on defense counsel by referring to his "cheap tricks" were beyond the bounds of proper closing argument); Ryan v. State, 457 So.2d 1084 (Fla. 4th DCA 1984) (holding that resort to personal attacks on defense counsel is an improper trial tactic which can poison the minds of the jury); Jackson v. State, 421 So.2d 15 (Fla. 3d DCA 1982) (determining that prosecution's personal attacks upon defense counsel during final argument were grossly improper and denied defendant his fundamental right to a fair *1178 trial). Defense counsel objected to the prosecutor's improper remarks, but he did not move for a mistrial because all objections were overruled. When an objection is overruled, counsel is not required to move for a mistrial in order to preserve the issue for appellate review. See Simpson v. State, 418 So.2d 984 (Fla.1982).
Upon close examination of the record and the permissible and impermissible evidence on which the jury could have relied, we hold the State has not proven beyond a reasonable doubt that the error complained of did not contribute to the verdict. See DiGuilio, 491 So.2d at 1135. Because this case involved contradicting versions of the events, the credibility of all witnesses was a central issue, and the prosecutor's remarks were far from proper, we are compelled to grant a new trial.
Reversed and remanded.
YOUNG, ROBERT A., Associate Judge, concurs.
BLUE, J., concurs specially.
BLUE, Judge, concurring.
I concur completely with the decision in this case. I write because of my concern with the number of criminal cases we review that involve improper argument by the State.[2] Many of these cases result in an affirmance because of a failure to preserve the claim of error or we conclude the evidence is overwhelming and the error is harmless. Neither of these reasons converts improper argument into proper.
It is unclear whether these improper arguments result from trial counsel's lack of knowledge of fair argument or an intentional departure from that standard. Neither is an acceptable reason for improper argument; however, if forced to choose, I would prefer to believe the problem is ignorance rather than duplicity.
The problem of improper argument is not of recent origin. In Washington v. State, 86 Fla. 533, 98 So. 605 (1923), Justice Terrell wrote:
It is proper to state in this connection that excessive vituperation or ridiculous epithets are out of place and should not be indulged in criminal prosecutions. The prosecuting attorney occupies a semijudicial position. He is a sworn officer of the government, with no greater duty imposed on him than to preserve intact all the great sanctions and traditions of the law. It matters not how guilty a defendant in his opinion may be, it is his duty under oath to see that no conviction takes place except in strict conformity to law. His primary considerations should be to develop the facts and the evidence for the guidance of the court and jury, and not to consider himself merely as attorney of record for the state, struggling for a verdict.
86 Fla. at 542-43, 98 So. at 609.
He repeated much the same advice in Stewart v. State, 51 So.2d 494 (Fla.1951):
This court has so many times condemned pronouncements of this character in the prosecution of criminal cases that the law against it would seem to be so commonplace that any layman would be familiar with and observe it. We have not only held that it is the duty of counsel to refrain from inflammatory and abusive argument but that it is the duty of the trial court on his own motion to restrain and rebuke counsel from indulging in such argument.
....
It would seem trite to state that the reason the courts throughout the country have condemned this type of abuse is that we are committed to the principle of fair and impartial trial, regardless of the offense one is charged with. So it is immaterial what one is charged with, he is entitled to a fair and orderly trial in an environment reflecting the constitutional *1179 guarantees which constitute fair trial. Under our system of jurisprudence, prosecuting officers are clothed with quasi judicial powers and it is consonant with the oath they take to conduct a fair and impartial trial. The trial of one charged with crime is the last place to parade pre-judicial emotions or exhibit punitive or vindictive exhibitions of temperament. It imposes an added burden on the tax-payers for court expenses and clutters the docket of this court with unnecessary appeals.
51 So.2d at 494-95.
Although these comments written long ago by Justice Terrell seem to single out prosecuting attorneys, I believe this is sage advice for all trial attorneys and trial judges. All attorneys are officers of the court and should never seek a victory at the expense of justice. Trial judges must also assume the responsibility to check improper argument. When trial judges fail to condemn improper argument, it becomes acceptable and thus repeated.
Would placing a copy of Justice Terrell's advice on every counsel table and trial bench be helpful? I am not sure, but it might be worth a try.
NOTES
[1] § 794.011(5), Fla. Stat. (1995).
[2] Although actual data is not available, it is the impression of this writer and other members of this court that an unusually high proportion of these cases originate in the Sixth Judicial Circuit.

While this court frequently reviews claims of improper argument by prosecutors, I acknowledge that the problem of improper argument is not limited to assistant state attorneys or to criminal cases.