744 So.2d 531 (1999)
Steven CONNELLY, Appellant,
v.
STATE of Florida, Appellee.
No. 97-05189.
District Court of Appeal of Florida, Second District.
October 15, 1999.
Rehearing Denied November 18, 1999.
Ronnie G. Crider, Clearwater, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Diana K. Bock, Assistant Attorney General, Tampa, for Appellee.
STRINGER, Judge.
Steven Connelly challenges his conviction and sentence for scheming to defraud several banks. Connelly managed several rental properties and allowed them to go into foreclosure by collecting rents without applying the proceeds to the mortgage notes. After the lenders initiated foreclosure, Connelly stalled foreclosure proceedings on several properties by filing sham pleadings and removing the actions from state circuit courts to federal bankruptcy courts across the country. Because we find that Connelly was denied a fair trial due to gross prosecutorial misconduct, we reverse.
*532 Prosecutor Migliore gave the venire panel the following hypothetical during voir dire:
The U.S. Senate Committee is in session. There is (sic) all the senators in a semi corral. There is the fellow sitting in front of the mike. The senator poses a question. The fellow there puts his hand to the [micro]phone, leans to the left, whispers in the ear of the fellow sitting there and takes his hand off the mike and says
One prospective juror answered, "pleads the fifth." Defense counsel's subsequent motion for mistrial was denied.
Prior to posing this hypothetical, the prosecutor noted: "The defendant is entitled to several constitutional protections. I think you probably know them all." The prosecutor then asked, "What constitutional rights does Mr. Connelly enjoy here in the court room today?" Thus, the hypothetical in question was one portion of a dialogue between the prosecutor and prospective jurors intended to test the panel's knowledge of a criminal defendant's constitutional rights. Good intentions notwithstanding, the prosecutor's hypothetical and the response it elicited were certainly, by the standard set forth in State v. Kinchen, 490 So.2d 21, 22 (Fla. 1985), susceptible of being interpreted as improper comments on Connelly's right to refrain from taking the stand. Comparing Connelly to a party who "pleads the fifth" at congressional hearings conjures up images of crooked politicians shielding themselves from prosecution with the privilege of silence. Comments such as this are considered serious error but are nevertheless subject to a harmless error analysis. See Heath v. State, 648 So.2d 660 (Fla. 1994). The prosecutor's hypothetical in the present case might be considered harmless but for other instances of prosecutorial misconduct brought to our attention in this appeal.
Connelly also argues that the trial court erred by denying his motion for mistrial based on personal attacks upon him and his theory of defense during cross-examination and closing argument. We agree that tolerating this level of prosecutorial misconduct without a stern admonition or curative instruction from the trial judge constitutes reversible error.
Connelly's defense at trial was lack of intent. Connelly testified that he did not believe his conduct was unlawful; he felt that these practices were aggressive, but legal business maneuvers. On cross-examination, Prosecutor Migliore made the following inquiry concerning Connelly's defense:
Q: You are a relatively soft spoken gentleman; aren't you?
A: Yes.
Q: Raised as a southerner?
A: Yes, sir.
Q: Raised to say yes, sir. No, sir. Yes, ma'am; No, ma'am. Just as polite as can be; fair enough?
A: That's correct. Yes, sir.
Q: You appear well in a suit today, if I may say so, or ask if you think you do?
A: I don't know.
Q: Certainly you don't present the picture sitting there today of a criminal; do you?
* * *
Q: Sir, isn't it true that you basically took control of [the properties] ... and engaged in the same scheme to defraud the lenders over there that you did to the Frances Dory properties? Or were you just trying to aggressively conduct your business?
* * *
A: No. My intent was not to do that.
Q: No. It's never going to be your intent here this afternoon to defraud anybody. Will it ever be, sir? You can sit here with a straight face, sir, and tell this jury that you committed deceitful acts that are probably somewhere between *533 100 and 200 and tell the members of the jury that you gaveyou had a little bit of conscious (sic) at the time but you certainly didn't intend to defraud anybody? Is that a fair statement, sir? (emphasis added).
Defense counsel objected and moved for mistrial, arguing that the State was belittling or negating the essence of Connelly's defense. The motion was erroneously denied.
Subsequently, in closing argument, Migliore suggested that Connelly lied on cross-examination: "Now, he's gotten up here and told you today what it is you would expect him to say. `I didn't intend....' What do you think of his willingness to lie and lie and lie and lie, literally, by his calculations on cross-examination hundreds of times." The gist of this argument was that Connelly should be found guilty based on the prosecutor's opinion of his "willingness to lie."
"It is `unquestionably improper' for a prosecutor to state that the defendant has lied." Washington v. State, 687 So.2d 279, 280 (Fla. 2d DCA 1997) (citing O'Callaghan v. State, 429 So.2d 691, 696 (Fla. 1983)). Therefore, without question, the prosecutor's comments during closing argument require reversal. Prosecutor Migliore's inquiry on cross-examination concerning Connelly's character, upbringing and appearance on the day of trial is equally disturbing. This line of questioning implied that Connelly deceived the lenders and in like manner was attempting to deceive the jury, with smooth talk and sharp attire. The hazard of the prosecutor's misconduct is magnified by the fact that the offense itself involves intentional untruthfulness, and Connelly's defense presented a pure question of credibility, i.e., did he engage in these practices based solely on an aggressive business judgment, or was he aware that his conduct was unlawful? Moreover, the prosecutor's inquiry and comments during closing improperly conveyed his opinion on Connelly's theory of defense and challenged his temerity in even raising the defense. See Miller v. State, 712 So.2d 451 (Fla. 2d DCA 1998) (error to deny motion for mistrial when prosecutor improperly expressed his opinion in an effort to discredit proper legal defense).
The egregious and obviously willful misconduct we review in this case requires a new trial. This court has issued countless opinions[1] cautioning against conduct such as this, which is far beneath the level of integrity and professionalism prescribed by The Florida Bar's standards of professional conduct. Unfortunately, reversal and public admonishment have proven to be ineffective deterrents. Perhaps the prospect of disciplinary proceedings will prove to be a more effective deterrent.
Reversed and remanded for new trial.
CAMPBELL, A.C.J., and WHATLEY, J., Concur.
NOTES
[1] See, e.g., Bell v. State, 723 So.2d 896, 897 (Fla. 2d DCA 1998) ("If attorneys do not recognize improper argument, they should not be in the courtroom. If attorneys recognize improper argument and persist in its use, they should not be members of The Florida Bar.") (quoting Luce v. State, 642 So.2d 4 (Fla. 2d DCA 1994) (Blue, J., concurring specially)). See also Palazon v. State, 711 So.2d 1176, 1178 n. 2 (Fla. 2d DCA 1998) (Blue, J., concurring specially); Washington v. State, 687 So.2d 279 (Fla. 2d DCA 1997).