906 So.2d 1082 (2004)
Alberto RODRIGUEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D01-2332.
District Court of Appeal of Florida, Third District.
January 21, 2004.
*1084 Bennett H. Brummer, Public Defender and Lisa Walsh, Assistant Public Defender, for appellant.
Charlie J. Crist, Jr., Attorney General and Barbara A. Zappi, Assistant Attorney General, for appellee.
Before GERSTEN, GREEN, and SHEVIN, JJ.

ON MOTION FOR REHEARING/CLARIFICATION
GREEN, J.
We grant rehearing and clarification, withdraw our previous opinion dated July 23, 2003, and substitute this opinion in its stead.
The appellant, Alberto Rodriguez, proceeded to trial by jury on the charges of resisting arrest without violence, Count 1; aggravated fleeing, Count II; unlawful display of authorized indicia of law enforcement authority, Count III; and reckless driving, Count IV. He was convicted of, and sentenced for, resisting an officer without violence, Count I; fleeing or attempting to elude a law enforcement officer, a lesser included offense of Count II; unlawful display of authorized indicia of law enforcement authority, Count III; and reckless driving, Count IV.
He timely brought the instant appeal and raises four issues. First, he asserts that his conviction and sentence for the unlawful display of authorized indicia of law enforcement authority pursuant to section 843.085, Florida Statutes (1995), must be vacated because this statute is impermissibly content-based and proscribes conduct which is protected by article I, sections 4 and 9 of the Florida Constitution, and the First and Fourteenth Amendments to the United States Constitution. Second, he asserts that the trial court erred in denying his motion for mistrial where the State elicited testimony from a police officer that he behaved in accordance with a class of other criminals. The appellant next contends that the trial court erred in denying his motion for mistrial where the state improperly argued that its police officer witness had no motive to lie and thereby improperly bolstered this witness's testimony. Finally, he maintains that the trial court erred in not suppressing certain portions of his statements which he maintains were made pursuant to the functional equivalent of a police interrogation, and without the benefits of his Miranda warnings.[1] For the reasons which follow, we reverse and vacate his conviction and sentence for the unlawful display of authorized indicia of law enforcement authority, but affirm his convictions and sentences on the remaining counts.

I
The evidence which gave rise to the charges was essentially that the appellant was observed by police driving recklessly and erratically on a motorcycle in traffic. A BOLO was issued indicating that a white Latin male on a motorcycle was fleeing from an officer who was traveling southbound on State Road 826, approaching State Road 874.
The officer in pursuit of the appellant, Detective Rodriguez, attempted to stop the appellant when he spotted him doing "wheelies" and cutting in and out of traffic, traveling in excess of 100 miles per hour. *1085 Detective Rodriguez could not keep up with the appellant, and lost him even though he was driving 105 miles per hour. He eventually caught up with the motorcycle and observed that the appellant was wearing a black shirt with the word "POLICE" written on the front and back. The motorcycle would slow down to perform "wheelies" and then continue to drive at excessive speeds. Many cars swerved out of the way to avoid either hitting the motorcycle or being hit by it.
Detective Rodriguez radioed for backup, and when he was confident enough backup was present, he activated his siren and lights, attempting to stop the appellant. The appellant looked back at the detective, who immediately pointed for the appellant to move off to the shoulder of the road. The appellant, however, pointed to his shirt, mouthed the word "police," and kept on driving. When the detective attempted to pass the appellant on the right, the appellant again mouthed the word "police" and pointed to his shirt.
The appellant finally slowed down and moved to the right. With the detective directly behind him, the appellant looked back, waved and took off again at over 100 miles per hour. The appellant began to drive erratically again, but Detective Rodriguez was able to keep up with him.
At this time, additional police officers responding to the backup request spotted the appellant when he came up behind their police vehicle. The appellant passed them, crossing over to the shoulder of the road to pass another vehicle, causing that vehicle to swerve into the officers' lane. The police vehicle was driving about 90 miles per hour at this point, and took evasive action to avoid hitting this vehicle. In the process, the officers' car spun out of control and struck the retaining wall. The police officers in this vehicle took no part in the remainder of the chase.
Eventually, the appellant exited the highway and dropped his motorcycle, attempting to flee on foot. There was another police vehicle right behind the appellant at this time. As the driver of the police vehicle put the car in park, the other officer exited the vehicle, chased the appellant on foot, and yelled, "Stop, police." The officer then apprehended the appellant and handcuffed him.
After the appellant was apprehended, other officers arrived on the scene. At this time, the appellant had not been read his Miranda rights. The appellant was seated on an embankment, handcuffed, when Miami-Dade Police Officer Johnson told him that he looked familiar. The appellant replied that they worked out at the same gym. Officer Johnson asked the appellant why he didn't stop during the chase. The appellant replied that he didn't want to, and that if his bike hadn't blown up, he probably would have outrun the other police officers.
Detective Rodriguez and some of the other officers who responded to the scene began to talk among themselves and question out loud whether the appellant had been fleeing because the motorcycle was stolen. The appellant again stated that the only reason the police caught him was because he blew the engine on his motorcycle. The appellant also stated that he knew doing a "wheelie" was considered reckless driving, and that he didn't stop because he didn't think that he would be pulled over because he was wearing a police shirt. At this time, the appellant also offered that the shirt could be purchased at a "ninety-nine cents" store. The appellant was charged with resisting arrest without violence, aggravated fleeing, unlawful display of authorized indicia of law enforcement authority and reckless driving.

*1086 II
The defense moved to suppress the statements that the appellant made to the police while seated on the embankment. At the hearing, Miami-Dade Police Officer Johnson testified that he had told the appellant that he looked familiar, and the appellant replied that was because they exercised at the same gym. Officer Johnson thereafter testified that he had asked the appellant why he failed to stop during the police chase, and the appellant replied that "he didn't want to" and would probably have outrun the police had his bike not blown up. Officer Johnson admitted on cross-examination that he had not Mirandized the appellant, and he didn't believe that anyone else did either.
Detective Rodriguez was also called to testify at the suppression hearing. He stated that he and other officers who responded to the scene began to talk among themselves and question out loud whether the appellant had been fleeing because the motorcycle was stolen. He claimed that the appellant's response that the only reason the police caught him was because he blew the engine on his motorcycle, was uttered spontaneously. On cross-examination, Detective Rodriguez testified that he never Mirandized the appellant because he had never asked him any questions. Instead, Detective Rodriguez believed that the appellant voluntarily offered that the t-shirt that he was wearing could be purchased at a "ninety-nine cents" store.
After hearing argument on the motion to suppress, the trial court suppressed only the appellant's statement that his "POLICE" shirt could be purchased at a ninety-nine cents store, but denied the motion as to the appellant's other statements. The case then proceeded to trial.
During the trial, Detective Rodriguez testified to the facts as described above. In addition, the detective testified that in the past, he had pulled people over in his unmarked car. Specifically, upon examination from the State, the following exchange occurred:
Q. And have people fled when you've done that or generally pulled over?
[DEFENSE COUNSEL]: Objection, relevance.
THE COURT: Overruled.
THE WITNESS: Well, most of the people pull over unless they're committing a crime.
[DEFENSE COUNSEL]: Objection. We have a motion, sidebar.
THE COURT: All right. I'll reserve on that motion. Mark it, Kattia.
Q. Did you finish your answer?
A. Usually, they pull over unless they have done something and they choose not to pull over.
THE COURT: Same objection and same motion.
THE COURT: Same ruling.
Following Detective Rodriguez's testimony, several other officers involved in the chase and arrest of the appellant testified, after which the State rested.
After the State rested its case, the defense moved for a mistrial arguing that when Detective Rodriguez said that most people pull over when they are asked to by the police, unless they are committing or have committed a crime, it turned the jury against the appellant. The prosecutor explained that he asked Detective Rodriguez that question to show that in the detective's experience, people would pull over even though he was in an unmarked vehicle. The trial court denied the motion.
The defense then moved for a judgment of acquittal. The court reserved without ruling on Count I, resisting an officer without violence, and denied the motion as to all of the other counts. The defense then rested and renewed all previous motions. The trial court renewed all of its previous *1087 rulings and additionally denied the defense's motion for judgment of acquittal.
During closing arguments the defense asked the jurors if they had paid close attention to Detective Rodriguez's demeanor when he testified on cross-examination. Specifically, the defense challenged Detective Rodriguez's credibility and reliability by stating that the officer's answers on cross-examination were evasive and exaggerated. The defense also stated that this officer's testimony was "completely impossible."
In response to this argument, the State argued that Detective Rodriguez did not know the appellant and made the following argument which is now the subject matter of this appeal:
[Prosecutor]: Detective Rodriguez realized that he couldn't keep up with this guy. If he was going to try to arrest him right then. So he set up a perimeter for the future. Detective Rodriguez doesn't know this defendant. He doesn't have any interest in this defendant or in convicting this defendant.
[Defense Counsel]: Objection, judge. Move to Strike.
[Court]: Sustained. Disregard what the prosecutor just said.
[Prosecutor]: First interest was the defendant.
[Defense Counsel]: Objection, we has admonished [sic].
[Court]: Sustained. Disregard.
[Defense Counsel]: Motion judge.
[Court]: Disregard the last statement.
The defense objected and moved to strike. The trial court sustained the objection and instructed the jury to disregard the State's comment.
The jury found the appellant guilty of: resisting an officer without violence as charged in Count I; fleeing or attempting to elude a law enforcement officer, a lesser included offense of Count II; the unlawful display of authorized indicia of law enforcement authority as charged in Count III; and reckless driving as charged in Count IV. He was sentenced to six months in county jail for Count I; 364 days in county jail for Count II; 180 days in county jail for Count III; and 60 days in county jail for Count IV. All counts were to run consecutively. This appeal followed.

III
As his first issue on appeal, the appellant argues that his conviction and sentence for the unlawful display of authorized indicia of law enforcement authority pursuant to section 843.085(1) must be vacated because the statute is impermissibly content-based, overbroad, and proscribes conduct protected by article I, sections 4 and 9 of the Florida Constitution, and the First and Fourteenth Amendments to the United States Constitution. Section 843.085(1), Florida Statutes, makes it unlawful for any person:
to wear or display any authorized indicia of authority, including any badge, insignia, emblem, identification card, or uniform, or any colorable imitation thereof, of any federal, state, county, or municipal law enforcement agency, or other criminal justice agency as now or hereafter defined in s. 943.045, which could deceive a reasonable person into believing that such item is authorized by any of the agencies described above for use by the person displaying or wearing it, or which displays in any manner or combination the word or words "police," "patrolman," "agent," "sheriff," "deputy," "trooper," "highway patrol," "Wildlife Officer," "Marine Patrol Officer," "state attorney," "public defender," "marshal," "constable," or "bailiff," which could deceive a reasonable person into believing that such item is authorized by any of *1088 the agencies described above for use by the person displaying or wearing it.
We agree and vacate his conviction and sentence on this charge.
The First Amendment, as applied to the states through the Fourteenth amendment, with certain exceptions, generally prohibits the government from enacting laws that abridge the freedom of speech because of disapproval of its content. See R.A.V. v. City of St. Paul, 505 U.S. 377, 382, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Ordinarily, the First Amendment denies a state "the power to prohibit dissemination of social, economic and political doctrine which a vast majority of its citizens believes to be false and fraught with evil consequence." Virginia v. Black, 538 U.S. 343, 123 S.Ct. 1536, 1547, 155 L.Ed.2d 535 (2003) (quoting Whitney v. California, 274 U.S. 357, 374, 47 S.Ct. 641, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring)). Moreover, the First Amendment affords protection to symbolic or expressive conduct as well as to actual speech. Black, 123 S.Ct. at 1547.
In the instant case, section 843.085(1) is content-based in that it focuses only on the content of the speech or expression and the direct impact that it has on a viewer. See Boos v. Barry, 485 U.S. 312, 321, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). Section 843.085(1) criminalizes the wearing or display of any indicia of a law enforcement officer if it would cause a reasonable person to be deceived. Since this statute is content-based, it is subject to strict judicial scrutiny and must be narrowly tailored to promote a compelling government interest. See United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). If a less restrictive alternative would serve the government's purpose, the legislature must use that alternative. Id.
The protections to content-based speech or expressions, however, are not absolute and the United States Supreme Court has recognized some narrow categories of expression which may be regulated by the government consistent with the Constitution. See Chaplinsky v. New Hampshire, 315 U.S. 568, 571-72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (observing that the First Amendment allows restrictions upon the content of speech in a few limited areas, which "are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."). Thus, for example, First Amendment protection does not generally encompass defamatory speech or libel; obscenity; or words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace" (i.e., "fighting words"). Id.; see also R.A.V., 505 U.S. at 383, 112 S.Ct. 2538.
In the instant case, we do not think that it can be said that the speech proscribed by section 843.085(1) may be properly categorized as defamatory, obscene or "fighting words". For this reason, we agree with the appellant that this statute is impermissibly content-based and proscribes content protected by both the Florida and U.S. Constitutions.
Moreover, we conclude that section 843.085(1) is unconstitutionally overbroad because it bans the wearing of any indicia of law enforcement authority regardless of the intent of the non-official. When legislation has been drafted so that it may be applied to conduct that is protected by the First Amendment, it is said to be unconstitutionally overbroad. See Wyche v. State, 619 So.2d 231, 234 (Fla.1993). Where lawmakers attempt to place restrictions on fundamental rights such as those found in the First Amendment, the laws must not only be directed toward a *1089 legitimate public purpose, they must be drawn as narrowly as possible. Id.[2]
Initially, we note that the appellant's conduct of pointing to his shirt, and mouthing the word "police" to the officers clearly came within the proscription found in section 843.085(1). Even though the appellant's own conduct was proscribed by section 843.085(1), he nevertheless has standing to interpose and maintain an overbreadth challenge to this statute:
This overbreadth doctrine permits an individual whose own speech or conduct may be prohibited to challenge an enactment facially "because it also threatens others not before the court those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid."
Id. at 235 (quoting Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985)). See also State v. Ashcraft, 378 So.2d 284, 285 (Fla.1979) ("Where the asserted overbreadth of a law may have a chilling effect on the exercise of first amendment freedoms, a challenge will be permitted even by one who does not show that his own conduct is innocent and not subject to being regulated by a narrowly drawn statute.").
Our conclusion that this statute is constitutionally infirm is buttressed by the U.S. Supreme Court's latest pronouncement in the "cross burning" case of Virginia v. Black, 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (April 7, 2003). In that decision, the Court outlined the history of cross burning and observed that a burning cross is not always intended to intimidate or threaten.
Rather, sometimes the cross burning is a statement of ideology, a symbol of group solidarity. It is a ritual used at Klan gatherings, and it is used to represent the Klan itself. Thus, "[b]urning a cross at a political rally would almost certainly be protected expression." ... Indeed, occasionally a person who burns a cross does not intend to express either a statement of ideology or intimidation. Cross burnings have appeared in movies such as Mississippi Burning, and in plays such as the stage adaptation of Sir Walter Scott's The Lady of the Lake.
Id. at 1551 (internal citations omitted). Thus, because the prima facie provision of the Virginia statute makes no distinction between cross burning done with intent to intimidate or threaten, and cross burning not done with such an intent, the court found the provision to be unconstitutional on its face. Id. at 1551-52.
Likewise, we conclude in the instant case that in the absence of an intent or scienter requirement, section 843.085(1) is constitutionally infirm because it makes no distinction between the innocent wearing or display of law enforcement indicia from that designed to deceive the reasonable public into believing that such display is official.[3] While there is certainly a legitimate *1090 interest in ensuring that the public not be deceived by law enforcement impersonators, we conclude that this statute must be narrowly tailored with an intent requirement so as not to run afoul of the rights guaranteed by the First Amendment.
Thus, for the foregoing reasons, we conclude that the appellant's conviction and sentence for violation of section 843.085(1) must be vacated.

IV
The appellant next argues that the trial court erred in denying his motion for mistrial where the State was permitted to elicit testimony from Detective Rodriguez that in the past, he had successfully stopped motorists in his unmarked vehicle unless the motorists had committed or were committing a crime. The appellant asserts that this testimony was improper because he was entitled to be tried on the evidence against him and not on the characteristics or conduct of certain classes of criminals in general. See Lowder v. State, 589 So.2d 933, 935 (Fla. 3d DCA 1991).
The State asserts that this issue was not preserved for appellate review where the defense objected to Detective Rodriguez's testimony but did not simultaneously move for a mistrial. See Woodel v. State, 804 So.2d 316, 323 (Fla.2001). Our review of the record, however, reveals that the court overruled this objection; therefore, it was unnecessary for the defense to move for a mistrial in order to preserve this issue for appellate review. See Simpson v. State, 418 So.2d 984, 986 (Fla.1982). See also Palazon v. State, 711 So.2d 1176, 1178 (Fla. 2d DCA 1998) ("When an objection is overruled, counsel is not required to move for a mistrial in order to preserve the issue for appellate review"); Thomas v. State, 701 So.2d 891, 892 (Fla. 1st DCA 1997) (same); Baldez v. State, 679 So.2d 825, 826 (Fla. 4th DCA 1996) (same).
On the merits, we agree with the appellant that the trial court abused its discretion when it permitted the state to elicit testimony from Detective Rodriguez about the behavior of a common class of criminals. See Lowder, 589 So.2d at 935; see also Nowitzke v. State, 572 So.2d 1346, 1355 (Fla.1990) (finding error where prosecutor elicited testimony from police in homicide case that other drug addicts steal from their families and commit homicides in connection with drug deals); Shelton v. State, 654 So.2d 1295, 1296 (Fla. 4th DCA 1995) (finding trial court abused discretion in permitting testimony, that typically one does not find marked money on drug dealers after sales, where no drugs or money was found on defendant following an alleged sale to undercover officer). We find, however, that there is no reasonable possibility that this error affected the verdict and thus, it was harmless. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).

V
The appellant urges that the lower court also erred in denying his motion for mistrial based upon the prosecutor's closing argument that Detective Rodriguez had no motive to lie. The appellant asserts that this argument improperly bolstered this witness's testimony on behalf of the State. See Lewis v. State, 780 So.2d 125, 130 (Fla. 3d DCA 2001); Fryer v. State, 693 So.2d 1046, 1047 (Fla. 3d DCA 1997); Buckner v. State, 689 So.2d 1202, 1203 (Fla. 3d DCA 1997); Cisneros v. State, 678 So.2d 888, 890 (Fla. 4th DCA 1996).
The record, however, reflects that this argument was made during rebuttal by the *1091 State in response to an argument made by the defense regarding Detective Rodriguez's trial testimony.
Given the fact that the challenged argument was in response to argument made by the defense, we agree with the State that the claimed error was invited and that the appellant may not now benefit from the same on appeal. See Cox v. State, 819 So.2d 705, 715 (Fla.2002), cert. denied 537 U.S. 1120, 123 S.Ct. 889, 154 L.Ed.2d 799 (2003); Braham v. State, 766 So.2d 297, 299 (Fla. 4th DCA 2000); Castle v. State, 305 So.2d 794, 797 (Fla. 4th DCA 1974). Moreover, where the trial court sustained the defense's objection to this argument and gave the jury a curative instruction, and where there was overwhelming evidence of guilt, we cannot conclude that this argument deprived the appellant of a fair trial to warrant a reversal. See Dozier v. Hodges, 849 So.2d 1094, 1095 (Fla. 3d DCA 2003) (finding allegedly inflammatory and prejudicial comments made during plaintiff's closing argument did not warrant a new trial where the trial court sustained objection and gave a curative instruction to jury).

VI
As his final point on appeal, the appellant maintains that the trial court erred in denying his motion to suppress the statements he made after he was arrested, handcuffed, and seated on an embankment.
The appellant argues that although he was not directly questioned by these officers, all of his statements should have been suppressed because they were made in response to the functional equivalent of an interrogation, as espoused in Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). There, the Supreme Court clarified the scope of the term "interrogation" for purposes of Miranda warnings, and said:
[T]he term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.... A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation.
Innis, 446 U.S. at 301, 100 S.Ct. 1682 (footnotes omitted). See also Traylor v. State, 596 So.2d 957, 966 n. 17 (Fla.1992) (finding that interrogation takes place for purposes of article I, section 9 of the Florida Constitution when a person is subjected to express questions, or other words or actions by a state agent, that a reasonable person would conclude are designed to lead to an incriminating response); Glover v. State, 677 So.2d 374, 376 (Fla. 4th DCA 1996) (finding police officers' conduct toward defendant was tantamount to custodial interrogation); Jones v. State, 497 So.2d 1268, 1270 (Fla. 3d DCA 1986) (stating that the term "interrogation," under Miranda, refers both to express questions and police conduct likely to induce incriminating responses).
Based upon Innis, we conclude that the denial of the motion to suppress appellant's statements made as the officers were huddled together and pondering out loud among themselves about the legal status of the motorcycle was proper, as the statements were not the product of the functional equivalent of an interrogation. We agree with the State that instead, the appellant had spontaneously interjected himself into the officers' conversations. Moreover, we note that the challenged *1092 statements were not related or in response to the officers' curiosity about whether the motorcycle was stolen.
However, we do find that the appellant's response to Officer Johnson as to why he didn't stop the motorcycle should have been suppressed as it was the product of direct custodial interrogation, see Glover, 677 So.2d at 376, but, we deem this error to be harmless. See Stephens v. State, 559 So.2d 687, 691 (Fla. 1st DCA 1990) (finding that appellant's statement during trial regarding his right to remain silent should not have been admitted, but was harmless error given the overwhelming evidence of guilt established at trial).
For these reasons, we therefore reverse and vacate the appellant's conviction and sentence for unlawful display of authorized indicia of law enforcement authority, and affirm his convictions and sentences on all remaining counts.
Reversed in part and affirmed in part. Conflict certified.
NOTES
[1] See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] In so holding, we certify conflict with the Second District's decision in Sult v. State, 839 So.2d 798 (Fla. 2d DCA 2003) rev. granted, 852 So.2d 862 (Fla. 2003).
[3] In the absence of a requirement that the offender who wears or displays law enforcement indicia intends to deceive a reasonable person into believing that such paraphernalia is authorized or legitimate, there is the potential of penalizing purely innocent, protected conduct. For example, an individual who wears or displays unauthorized law enforcement apparel or indicia merely in observance of Halloween or as an actor in a play or film is in violation of this statute if a reasonable person could be deceived as to its authenticity. Moreover, in the aftermath of the "September 11th" tragedy, it has now become commonplace for many Americans to wear authentic-looking law enforcement t-shirts, caps and other paraphernalia merely put of reverence for the tragedy's heroes. All such person would nevertheless be in violation of section 843.085(1). We believe that Floridians do enjoy the right to innocently wear or display such paraphernalia under both the Florida and U.S. Constitutions as long as they are not intentionally attempting to pass themselves off as law enforcement officials.