Levine, J.
The issue presented on appeal is whether the appellant in this case was subject to conditions tantamount to a custodial interrogation. We hold that, although appellant was in custody, he was not interrogated directly nor was he subject to an atmosphere that was effectively a custodial interrogation. Rather, appellant made unsolicited incriminating statements' without having been asked any questions and without being put in conditions tantamount to an interrogation. '
While in Davie, Florida, located in Bro-ward County, appellant fired his gun into a van containing a woman, her friend, and the woman’s five children. A bullet struck and killed one of the children.
Appellant subsequently left Broward County and went to Tampa with a friend who did not know about the shooting. The next day, his friend learned that appellant was wanted in connection with a homicide and confronted appellant. Appellant decided to voluntarily turn himself in to the authorities.
Appellant went to the Tampa Police Department and informed an officer sitting at the front desk that he wished to speak with someone about an accidental shooting in South Florida and that he may be wanted. The officer did a warrant check and saw there was an outstanding warrant for appellant’s arrest. Appellant was taken into custody and placed in a holding cell within the Tampa police’s homicide department. The Davie police were contacted, and the Davie police stated that they would come to take appellant into custody and transport him back to Broward. While waiting for the Davie police to arrive, two officers, Sergeant Massucci and Detective Camp, stayed to watch appellant.
Appellant was not given Miranda[1] warnings. The police in Tampa did not feel *1052 the warnings were necessary because they did not plan on questioning appellant. Nevertheless, appellant began making statements to Detective Camp, saying that he “felt like talking to [Camp] and getting it out.” Appellant said that he was sorry, that he did not see “how people can kill people and not feel bad about it,” and that he wished “to take back what [he] did.” Appellant also complained about having a bad childhood, and expressed his desire to commit “suicide by cop.” Detective Camp wrote down everything that appellant said. Although Detective Camp made a few general comments expressing sympathy for appellant, he never asked appellant a single question, nor did he expressly encourage appellant to elaborate. The detective primarily listened to appellant.
Appellant asked Detective Camp what Camp thought appellant’s charges were. Detective Camp told appellant the charge was murder, but he did not know what degree. Appellant told Detective Camp that it was not first-degree murder because the shooting was not “knowing or intentional.”
Appellant was in the Tampa Police Department’s custody for about four hours. When the police from Davie arrived, the Davie police Mirandized appellant whereupon appellant invoked his right to remain silent. Appellant again invoked his rights upon returning to Broward County.
Appellant moved to suppress the statements he made to the police in Tampa. The trial court denied appellant’s motion. The trial court found that, while appellant was certainly in custody, he had not been interrogated. Following a jury trial, appellant was convicted of first-degree murder and six counts of attempted second-degree murder. Appellant appeals the trial court’s denial of his motion to suppress.
We review the denial of a motion to suppress as a mixed question of law and fact. See Connor v. State, 803 So.2d 598, 605 (Fla. 2001). Although we defer to the trial court on questions of historical fact, the constitutional issue is reviewed de novo. Id.
“The safeguards provided by Miranda apply only if an individual is in custody and subject to interrogation. Where either the custody or interrogation prong is absent, Miranda does not require warnings.” Timmons v. State, 961 So.2d 378, 379 (Fla. 4th DCA 2007) (citation omitted). In the present case, appellant was clearly in “custody” as he was held in a cell awaiting the arrival of the Davie police. See id. As such, the only remaining question for our consideration is whether police in Tampa “interrogated” appellant.
The United States Supreme Court has defined “interrogation” as follows:
[T]he term “interrogation” under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police.... A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.
Rhode Island v. Innis, 446 U.S. 291, 301-02, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (footnotes omitted).
*1053 In this case, neither Detective Camp nor Sergeant Massucci asked appellant a single question or encouraged appellant to elaborate on anything he said. As such, there was no “express” interrogation. Nevertheless, we must determine whether the Tampa police “should have known” the following was “reasonably likely to elicit an incriminating response”: (1) holding appellant in a cell for four hours while police from another jurisdiction arrived, (2) writing down what appellant said, (3) responding to appellant with general comments expressing sympathy, and (4) responding to appellant’s question regarding his charges. See id.
Courts have held confining a suspect to a holding cell does not subject the suspect to the functional equivalent of interrogation. State v. Edenfield, 27 So.3d 222, 225 (Fla. 2d DCA 2010). Further, no interrogation occurs where an officer does not initiate a conversation and merely responds to the suspect. See Miranda, 384 U.S. at 444, 86 S.Ct. 1602 (explaining that custodial interrogation means “questioning initiated by law enforcement officers”) (emphasis added); see also United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (“Miranda does not bar the government from introducing into evidence spontaneous statements made during a conversation not initiated by the officer. An officer’s request for clarification of a spontaneous statement generally does not constitute interrogation.”) (citation omitted); United States v. Briggs, 273 F.3d 737, 740 (7th Cir. 2001) (“A police officer’s response to a direct inquiry by the defendant does not constitute ‘interrogation.’ ”); People v. Gonzales, 987 P.2d 239, 242-43 (Colo. 1999) (“A response explicitly permitting a defendant to make an inculpatory statement does not rise to the level of police interrogation.”); State v. Cryan, 363 N.J.Super. 442, 833 A.2d 640, 647-48 (N.J. Super. Ct. App. Div. 2003) (holding the defendant was not interrogated when the defendant “initiated each and every encounter with the police in an effort to improperly obtain favorable treatment from the officers connected with his arrest[,]” and “[t]he incriminating statements defendant made in the course of these encounters were the product of his own conduct”). Finally, responding to a suspect’s inquiry regarding his or her charges is not reasonably likely to elicit a response. See State v. Bouie, 235 W.Va. 709, 776 S.E.2d 606, 614 (2015) (holding that a defendant’s incriminating statement was “spontaneous” when the defendant requested the criminal complaint against him, the officer wordlessly handed the defendant the complaint, and the defendant made an incriminatory statement); State v. Spencer, 149 N.H. 622, 826 A.2d 546, 551 (2003) (stating that showing the defendant surveillance photographs was not “the functional equivalent of interrogation” because the police did so in response to the defendant’s “repeated questions about the basis for her arrest and claims of innocence”).
However, “[c]ase law is replete with examples of where a statement made by a law enforcement officer to the suspect, without benefit of Miranda warnings, is a type of interrogation prohibited by Innis.” Cooper v. State, 27 So.3d 715, 717 (Fla. 2010). For example, in Glover v. State, 677 So.2d 374 (Fla. 4th DCA 1996), the defendant was arrested and placed in an interrogation room for over an hour without the benefit of Miranda warnings. The defendant continuously demanded to know why he was being held, but the police officers refused to answer, even as the defendant grew “increasingly agitated.” See id. at 375. This court held that “the police officers’ conduct toward appellant was unduly protracted and evocative such that the atmosphere was tantamount to a custodial interrogation.” Id. at 376.
*1054 Similarly, in Origi v. State, 912 So.2d 69 (Fla. 4th DCA 2005), the defendant was arrested and invoked his right to remain silent. The police, when searching the defendant’s car, found significant amounts of drugs in a cooler. One officer told the defendant, “That’s a lot of drugs you had,” to which the defendant responded, “I have to make money and make a living.” Id. at 70. This court held that the statement was tantamount to an interrogation. Id. at 73. First, the statement was directed to the defendant. Second, the statement was reasonably likely to elicit a response in that it assumed the defendant possessed drugs and prompted a response regarding the quantity of drugs. Finally, this court noted that when the officer asked the question, he had the cooler of drugs in one hand and the defendant in the other.
In the present case, appellant voluntarily made incriminating statements, and the police were not obligated to stop him from doing so. See Miranda, 384 U.S. at 478, 86 S.Ct. 1602 (“There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make.”) (footnote omitted); see also Edwards v. Arizona, 451 U.S. 477, 485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (explaining the police are not prohibited from “merely listening” to a defendant’s voluntary, volunteered statements). Furthermore, Detective Camp could respond to appellant in the manner he did without transforming the interaction into the functional equivalent of an interrogation. See Chipps, 410 F.3d at 445; Briggs, 273 F.3d at 740-41; Bouie, 776 S.E.2d at 614.
Here, unlike Glover, the police did not create an “atmosphere ... tantamount to a custodial -interrogation.” Glover, 677 So.2d at 376. Whereas in Glover, the defendant was arrested, held in an interrogation room, and was not told why he was arrested, in the present case, appellant was held in a holding cell and knew why he was in custody. After all, appellant ended up in the holding cell after he had voluntarily turned himself in to the police in Tampa. Such conditions were not designed to “agitate” appellant nor were they “unduly protracted and evocative.” Id. Indeed, nothing about the conditions of appellant’s detention indicate he was subjected to an “interrogation.”
Furthermore, the mere act of writing down what appellant said did not subject appellant to conditions “tantamount to a custodial interrogation” as the officer’s note-taking did not encourage appellant to continue making statements. See id. Simply because Detective Camp recorded appellant’s statements does not mean Miranda warnings were necessary. See Jackson v. State, 317 So.2d 454, 455-56 (Fla. 4th DCA 1975) (explaining that taping a telephone call does not require a Miranda warning).
Lastly, Detective Camp’s statements to appellant were not “reasonably likely to elicit an incriminating response.” See Innis, 446 U.S. at 301, 100 S.Ct.1682. Detective Camp mostly listened and limited his responses to general statements expressing sympathy. Unlike Origi, where the comment, “that’s a lot of drugs you had,” not only initiated the conversation but assumed the defendant possessed drugs and called for an answer as to the amount, Detective Camp’s response to appellant’s question regarding appellant’s likely charges did not initiate the conversation, nor did he assume wrongdoing on appellant’s part,. and finally did not call for appellant to respond. Consequently, we affirm the trial court’s denial of appellant’s motion to suppress.
In summary, we conclude appellant was not “interrogated” either by direct ques *1055 tioning or practices tantamount to an interrogation. We find appellant’s remaining arguments to be without merit and affirm without comment.

Affirmed.

Khngensmith and Kuntz, JJ., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).