# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-1681

_____

STATE OF FLORIDA,

    Appellant,

    v.

JUSTIN DAVID LANTZ,

    Appellee.

_____

On appeal from the Circuit Court for Okaloosa County.
John T. Brown, Judge.

February 23, 2018

PER CURIAM.

The State appeals an order suppressing a number of incriminating statements made by Justin Lantz after invoking his right to counsel. We reverse in part and remand because some of the incriminating statements suppressed by the trial court were offered voluntarily by Mr. Lantz and were not the product of questions, or other actions by law enforcement that were reasonably likely to elicit incriminating responses.

### I.

Mr. Lantz was charged with first degree murder of his mother and he entered a plea of not guilty. After being arrested late one night under a bridge, and in close proximity to his dead mother's floating body, Mr. Lantz was brought to an interrogation room at

the police station. He was told of his rights to remain silent and to counsel. And he asked for a lawyer. At this, the officers told Mr. Lantz that they'd like to talk to him again after he got a lawyer. They told him that he would leave the room to go to the jail after a crime scene technician arrived to process him for physical evidence (he had scrapes and cuts on his body). But then, they had to wait for the technician to arrive for about two hours. In the meantime, officers got Mr. Lantz coffee and they waited for the technician to arrive. During this period, Mr. Lantz became chatty and made incriminating statements. He has filed a motion to suppress the statements, arguing that he made them within the context of an unlawful interrogation after he had invoked his constitutional right to counsel.

After a suppression hearing, the trial court ordered some of his statements suppressed and others not. The State appeals the suppression order asserting that six portions of his statements shouldn't be suppressed because Mr. Lantz volunteered the information without law enforcement asking questions of him or taking other actions reasonably likely to elicit his incriminating responses.

## II.

A ruling on a motion to suppress is reviewed by the appellate court with a presumption of correctness. *Martin-Godinez v. State*, 225 So. 3d 926, 927 (Fla. 1st DCA 2017) (citing *Spivey v. State*, 45 So. 3d 51, 54 (Fla. 1st DCA 2010)). "This Court applies a mixed standard of review, giving deference to the factual findings that are supported by competent, substantial evidence, but reviewing the determination of constitutional rights de novo." *Id.* The ultimate question here, of whether the action of officers constitutes "interrogation" for *Miranda* purposes, is a legal question that we review de novo. *See Everett v. State*, 893 So. 2d 1278, 1284 (Fla. 2004); *United States v. Yepa*, 862 F.3d 1252, 1258 (10th Cir. 2017).

### A.

The Florida and United States Constitutions protect those arrested for committing crimes against being compelled to become witnesses against themselves in their own criminal cases. U.S. Const. amend. V; Art. I, § 9, Fla. Const.; *Ramirez v. State*, 739 So.

2d 568, 572–73 (Fla.1999). Suspects arrested for crimes must be notified of their "right to remain silent, that any statement [made] may be used as evidence against [them], and [of the] right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "Once warnings have been given, the subsequent procedure is clear. . . . If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 473-74. Continuing with an interrogation after invocation of the right to counsel risks suppression of whatever exculpatory or inculpatory statements arise from the interrogation. *Id.* at 479 ("[U]nless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."). *But see, e.g., New York v. Quarles*, 467 U.S. 649, 651 (1984) (recognizing limited exceptions to the prophylactic rule).

Once the right to counsel has been invoked, *Miranda* requires counsel during interrogations. But it does "not require counsel's presence for *all* further communications; only for interrogations." *Everett v. State*, 893 So. 2d 1278, 1284 (Fla. 2004) (emphasis in original); *see also Edwards v. Arizona*, 451 U.S. 477, 485-86 (1981) ("The Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation. Absent such interrogation, there would have been no infringement of the right."). Thus, *Miranda* is implicated only when a defendant in custody is subjected to questioning or "its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *see also Traylor v. State*, 596 So. 2d 957, 966 (Fla. 1992) ("These guidelines . . . do not apply to volunteered statements initiated by the suspect or statements that are obtained in noncustodial settings or through means other than interrogation"). Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301; *see also Traylor,* 596 So. 2d at 966, n.17 ("Interrogation takes place for Section 9 purposes when a person is subjected to express questions, or other words or actions, by a state agent, that a reasonable person would conclude are designed to lead to an incriminating response."). However, "no interrogation occurs

3

where an officer does not initiate a conversation and merely responds to the suspect." *Gordon v. State*, 213 So. 3d 1050, 1053 (Fla. 4th DCA 2017). "Officers do not interrogate a suspect simply by hoping that he will incriminate himself." *Arizona v. Mauro*, 481 U.S. 520, 529 (1987).

B.

In this case, the State challenges the suppression of five parts of a police-station dialogue between Mr. Lantz and officers after he had invoked his right to counsel. The State argues that it was not interrogating Mr. Lantz when he voluntarily offered inculpatory statements, and we partly agree.

The State first challenges the suppression of statements found in the record, page 114, line 9 through line 20, of the interview transcript. The statements are immediately preceded by dialogue that the trial court did not suppress. In this section, the officer responded to a question posed by Mr. Lantz regarding potential sentences for murder as follows:

Mr. Lantz: What's murder these days? Life?"

[Investigator]: I don't know anything. I've been doing this 27 years, to be honest with you, sir. It [sic] really, case by case (unintelligible)."

Mr. Lantz: I didn't – I didn't kill the b****, but somebody paid me to f***ing help him. That was a good way to make money.

[Investigator]: No.

Mr. Lantz: Somebody else killed her. I didn't kill her. The body was there. He told me to come get her. 10 grand (unintelligible) pay me. Never going to see that money. And now he got away with murder, and I get the f***ing rap.

In this instance, there wasn't officer questioning, or words or actions by an officer "reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301. The officer

4

simply responded to an unsolicited question from Mr. Lantz regarding the sentence for murder, and did so in way that didn't invite Mr. Lantz's incriminating response. These circumstances do not constitute interrogation requiring suppression of Mr. Lantz's incriminating statements. *See Gordon,* 213 So. 3d at 1054 (finding no interrogation where the officer responded to the suspect's question and "did not initiate the conversation, nor did he assume wrongdoing on appellant's part, and finally did not call for appellant to respond").

For similar reasons, we conclude that the trial court erroneously suppressed statements found in the record at page 126, line 6, through page 128, line 10; and page 134, line 1 through page 135, line 16. As in the first instance, the officers in these later parts of the transcript variously responded to questions posed by Mr. Lantz. But they did not ask questions, or take actions that were reasonably likely to elicit incriminating statements. We thus reverse the suppression order also with respect to these parts of the dialogue.

In all of these instances, it wasn't unlawful for officers to wait with Mr. Lantz for the crime scene technician to arrive, even if Mr. Lantz was intoxicated at the time. *See, e.g., Pennsylvania v. Muniz,* 496 U.S. 582, 600-606 (1990) (holding that an intoxicated suspect's statements to officers over a period of time were not the product of interrogation); *Mauro*, 481 U.S. at 529 (recognizing that police don't "interrogate" a suspect simply by hoping he will confess). Nor do we think that giving Mr. Lantz coffee was reasonably likely to elicit incriminating statements. *See, e.g., Bobby v. Dixon*, 565 U.S. 23, 29 (2011) (finding that a defendant's statements were voluntarily made, in part, because he "was given water and offered food, and was not abused or threatened").

With respect to all other parts of the transcript challenged by the State, we affirm.

### III.

AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this opinion.

LEWIS, OSTERHAUS, and BILBREY, JJ., concur.

5

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Pamela Jo Bondi, Attorney General, and Jason W. Rodriguez, Assistant Attorney General, Tallahassee, for Appellant.

Andy Thomas, Public Defender, and Justin Karpf, Assistant Public Defender, Tallahassee, for Appellee.