906 So.2d 1013 (2005)
Kimberly S. SULT, Petitioner,
v.
STATE of Florida, Respondent.
No. SC03-542.
Supreme Court of Florida.
June 23, 2005.
*1014 John H. Trevena, Largo, FL, Patrick B. Calcutt and Kathleen M. Calcutt of Calcutt and Calcutt, St. Petersburg, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, Robert J. Krauss, Chief Assistant Attorney General, Bureau Chief, Tampa Criminal Appeals and John M. Klawikofsky, Assistant Attorney General, Tampa, FL, for Respondent.
WELLS, J.
We have for review a decision of a district court of appeal on the following question, which the court certified to be of great public importance:
IS SECTION 843.085, FLORIDA STATUTES (2001), UNCONSTITUTIONAL AS OVERBROAD, VAGUE, OR A VIOLATION OF THE RIGHT TO SUBSTANTIVE DUE PROCESS?
Sult v. State, 839 So.2d 798, 806 (Fla. 2d DCA 2003). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the following reasons, we answer the certified question in the affirmative and hold that section 843.085 is unconstitutionally overbroad, vague, and violates substantive due process.

FACTS
On June 14, 2001, petitioner Kimberly Sult entered a convenience store in St. Petersburg wearing a black T-shirt on which was printed a large star and five-inch letters spelling the word "SHERIFF." The star was the official sheriff's five-point star and contained the official sheriff's seal and the words "Pinellas County Sheriff's Office." Sult was also wearing denim shorts and sandals. At trial, Detective Frank Davis identified the T-shirt Sult had been wearing as an official shirt of the Pinellas County Sheriff's Office and testified that the shirt was used in emergency response situations.
Corporal Jerry Davis and Deputy Jeff McConaughey of the Pinellas County Sheriff's Office noticed Sult enter the store. The officers approached Sult and asked, "Do you work for us?" Sult replied, "Yes," and opened her wallet. In Sult's wallet, the officers saw a Pinellas County Sheriff's Office identification card clipped to her wallet. Corporal Davis believed that Sult was in violation of their office policy by wearing only part of a uniform. Several minutes later, the officers discovered that Sult was not an employee of the sheriff's office. She had previously been employed by the Pinellas County Sheriff's Office as a criminal justice specialist and as a detention deputy recruit. When she left her employment with the sheriff's office in October 2000, she did not return her identification card. Sult purchased the T-shirt at Americana Uniforms, a store open to the public. Sult testified that when she purchased the T-shirt, she was not in uniform and was not asked for identification. It was further demonstrated at trial that other indicia of law enforcement authority are commercially sold to the public. Sult was charged and ultimately convicted of violating section 843.085(1), Florida Statutes (2001).[1] *1015 During the trial, Sult challenged the constitutionality of section 843.085, asserting that the statute was vague or overbroad and that the statute violated substantive due process and equal protection. The trial court rejected Sult's arguments. The trial court first found that the statute did not violate substantive due process. The court also applied a rational basis test and found that the statute was rationally related to the Legislature's legitimate interest in protecting the citizenry. State v. Sult, No. CTC 01-17048 MMANO DIV: E (Fla. 6th Cir. Ct. amended order filed Oct. 29, 2001). The trial court further found that the statute was not unconstitutionally vague or overbroad. The court reasoned that the statute was not vague because it gives adequate notice of what conduct is prohibited and persons of common intelligence would not have to guess at its meaning or differ as to its application. The statute was not overbroad because no constitutionally protected guarantees of free speech or free association were affected. Id.
Finally, the court found that the statute did not violate equal protection of the law based on a claim of selective prosecution, reasoning that the statute was no more vulnerable to selective prosecution than any other and that there was no particular class of people who stand to be more affected by its enactment or enforcement. However, the court certified the following question to the district court:
IS CHAPTER 843.085 VIOLATIVE OF THE CONSTITUTION OF THE UNITED STATES AND OF THE STATE OF FLORIDA IN THAT IT CRIMINALIZES WHAT COULD BE INNOCENT CONDUCT, SPECIFICALLY THE WEARING OF PARAPHERNALIA *1016 THAT CAN BE PURCHASED THROUGH COMMERCIAL CHANNELS BY THE PUBLIC AND COULD BE MISCONSTRUED AS INDICIA OF AUTHORITY?
The Second District Court of Appeal held that the statute was not overbroad or vague and did not violate substantive due process. The district court considered these challenges in light of the Legislature's purpose in enacting the statute to prevent individuals from committing crimes while posing as police officers.
With respect to the overbreadth analysis, the court recognized that wearing a T-shirt that bears a political message is protected speech but that "the right to dress as one pleases, vis-à-vis style and fashion, has little or no First Amendment implications." Sult, 839 So.2d at 803 (quoting City of Daytona Beach v. Del Percio, 476 So.2d 197, 202 (Fla.1985)). The court stated that section 843.085 does not prohibit an expression of support for law enforcement but only prohibits the wearing or displaying of any indicia of authority. The statute thus implicates only an incidental amount of expressive conduct because a shirt that says "Pinellas County Sheriff's Office" at best expresses an ambiguous message. Based on this analysis, the district court held that "[i]ndividuals who wear, without authorization, full law enforcement uniforms or display law enforcement badges are not entitled to First Amendment protection for their conduct." Sult, 839 So.2d at 804. The court held that section 843.085 was therefore not overbroad. Id. at 802-04.
The Second District also held that the statute was not vague. "By flashing the sheriff's identification card, Sult showed that she was trying to deceive the officers, and the officers believed that she was an employee of the sheriff's office who had committed a uniform violation." Id. at 804. The court further noted that because the statute did involve some incidental First Amendment interests, the statute was not vague even under a facial analysis because the statute required a finding that a "reasonable person" could be deceived into believing that such item was authorized by a law enforcement agency. In so holding, the court relied on two cases from this Court that upheld statutes employing a reasonable person standard. See L.B. v. State, 700 So.2d 370 (Fla.1997) (upholding "common pocketknife" exception to the definition of a weapon); Bouters v. State, 659 So.2d 235 (Fla.1995) (upholding aggravated stalking statute).
Finally, the Second District held that the statute did not violate substantive due process. The court stated that "the incidental effect the statute may have on First Amendment rights does not justify application of the strict scrutiny level of review. Rather, we agree with the trial court's use of the rational basis test in its substantive due process analysis." Sult, 839 So.2d at 805. The court concluded that the State had a legitimate and even compelling interest in preventing robberies and kidnappings by individuals posing as law enforcement officers and that the statute was rationally related to that goal. Id. at 806.
Based on the foregoing, the Second District held that section 843.085 was not overbroad or vague and did not violate substantive due process. In so holding, the court certified the previously stated question to this Court. Sult, 839 So.2d at 806. This Court accepted review of the certified question.
The Third District Court of Appeal has also considered the constitutionality of this statute but reached a conflicting result. In Rodriguez v. State, 906 So.2d 1082, 2004 WL 93942 (Fla. 3d DCA Jan. 21, 2004), the Third District held that section 843.085 was unconstitutionally overbroad. In that case, police observed the appellant, Alberto *1017 Rodriguez, driving recklessly and erratically on a motorcycle in traffic. The officer in pursuit of Rodriguez attempted to stop him and noticed that Rodriguez was wearing a black shirt with the word "POLICE" written on the front and the back. Once the officer activated his siren and lights, Rodriguez looked back at the officer, pointed at his shirt, mouthed the word "police," and kept driving. When the officer attempted to pass Rodriguez, Rodriguez again mouthed the word "police" and pointed to his shirt. Rodriguez later admitted that he thought the officer would not pull him over if he convinced the officer that he was a member of the police department.
After an extended chase, Rodriguez was ultimately apprehended and charged with, among other things, violating section 843.085. The jury convicted Rodriguez of violating the statute. On appeal, Rodriguez argued that section 843.085 was unconstitutional because the statute was impermissibly content-based and overbroad and proscribed conduct protected by the Florida and Federal Constitutions.
The Third District held that section 843.085 was overbroad, first noting that the First Amendment afforded protection to symbolic conduct or expressive conduct as well as to actual speech. The court found that section 843.085(1) was content-based "in that it focuses only on the content of the speech or expression and the direct impact that it has on a viewer." Rodriguez, 906 So.2d at 1088. Because the statute was content-based, the Third District stated that it was subject to strict judicial scrutiny and must be narrowly tailored to promote a compelling governmental interest.
The Third District concluded that section 843.085(1) was unconstitutionally overbroad because it banned the wearing of any indicia of law enforcement authority regardless of the intent of the wearer and because it may be applied to conduct that is protected by the First Amendment. The court reasoned that without a specific intent requirement, the statute did not distinguish between the innocent wearing or displaying of law enforcement indicia from that designed to deceive the public into believing that such display was official. Thus, there was the potential of penalizing purely innocent conduct.[2] "While there is certainly a legitimate interest in ensuring that the public not be deceived by law enforcement impersonators, we conclude that this statute must be narrowly tailored with an intent requirement so as not to run afoul of the rights guaranteed by the First Amendment." Rodriguez, 906 So.2d at 1089-90. The Third District's decision did not consider the constitutionality of section 843.085 under a vagueness or substantive due process analysis.

*1018 ANALYSIS
We agree with the Third District that section 843.085(1) is unconstitutional. We answer the Second District's certified question in the affirmative, quash the Second District's decision, and remand for further proceedings in accord with this opinion.
We conclude that the defects in section 843.085(1) are similar to the defects we considered in respect to the City of Tampa's loitering ordinance in Wyche v. State, 619 So.2d 231 (Fla.1993).[3] Our decision in Wyche controls the answer to the certified question in this case. In Wyche, we held that the ordinance was "unconstitutional because it unnecessarily infringes on constitutional rights; it is too vague because a violation of the law is determined based on law enforcement officers' discretion; [and] it violates substantive due process by punishing innocent activities." Id. at 234.
In answer to the certified question in Wyche, we explained in respect to the overbreadth challenge to the statute:
The First Amendment to the United States Constitution and article I, section 4 of the Florida Constitution protect the rights of individuals to express themselves in a variety of ways. The constitutions protect not only speech and the written word, but also conduct intended to communicate. See, e.g., Texas v. Johnson, 491 U.S. 397[, 109 S.Ct. 2533, 105 L.Ed.2d 342] (1982); Brown v. Louisiana, 383 U.S. 131[, 86 S.Ct. 719, 15 L.Ed.2d 637](1966). Further, the First Amendment and article I, section 5 of the Florida Constitution protect the rights of individuals to associate with whom they please and to assemble with others for political or for social purposes. See, e.g., Buckley v. Valeo, 424 U.S. 1[, 96 S.Ct. 612, 46 L.Ed.2d 659] (1976); Griswold v. Connecticut, 381 U.S. 479[, 85 S.Ct. 1678, 14 L.Ed.2d 510] (1965); State v. Dodd, 561 So.2d 263 (Fla.1990).
When lawmakers attempt to restrict or burden fundamental and basic rights such as these, the laws must not only be directed toward a legitimate public purpose, but they must be drawn as narrowly as possible. See Firestone v. News-Press Publishing Co., 538 So.2d 457 (Fla.1989). As the United States Supreme Court has noted, "[b]ecause First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." NAACP v. Button, 371 U.S. 415, 433[, 83 S.Ct. 328, 9 L.Ed.2d *1019 405] (1963). Put another way, statutes cannot be so broad that they prohibit constitutionally protected conduct as well as unprotected conduct. News-Press Publishing Co., 538 So.2d at 459.
When legislation is drafted so that it may be applied to conduct that is protected by the First Amendment, it is said to be unconstitutionally overbroad. See Southeastern Fisheries Ass'n, Inc. v. Department of Natural Resources, 453 So.2d 1351, 1353 (Fla.1984). This overbreadth doctrine permits an individual whose own speech or conduct may be prohibited to challenge an enactment facially "because it also threatens others not before the court  those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." Brockett v. Spokane Arcades, Inc., 472 U.S. 491[, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394] (1985). The doctrine contemplates the pragmatic judicial assumption that an overbroad statute will have a chilling effect on protected expression. City of Daytona Beach v. Del Percio, 476 So.2d 197, 202 (Fla.1985).
The Tampa ordinance, by potentially applying to such conduct as talking and waving to other people, clearly implicates protected freedoms. The ordinance limits the rights of those who have been previously convicted of prostitution to engage in noncriminal routine activities. The ordinance suggests that it is incriminating when a "known prostitute" "repeatedly beckons to, stops or attempts to stop, or engages passers-by in conversation, or repeatedly stops, or attempts to stop motor vehicle operators by hailing, waving of arms, or any bodily gesture." Hailing a cab or a friend, chatting on a public street, and simply strolling aimlessly are time-honored pastimes in our society and are clearly protected under Florida as well as federal law. Papachristou v. City of Jacksonville, 405 U.S. 156[, 92 S.Ct. 839, 31 L.Ed.2d 110] (1972). All Florida citizens enjoy the inherent right to window shop, saunter down a sidewalk, and wave to friends and passersby with no fear of arrest. A formerly convicted prostitute engaging in these activities, however, risks prosecution under the ordinance for loitering, and the risk of arrest certainly would deter the exercise of these rights. See Johnson v. Carson, 569 F.Supp. 974, 979 (M.D.Fla.1983).
Wyche correctly asserts that the ordinance, which prohibits loitering "in a manner and under circumstances manifesting the purpose of" engaging in acts of prostitution, does not require proof of unlawful intent as an element of the offense. Indeed, the ordinance allows arrest and conviction for loitering under circumstances merely indicating the possibility of such intent, such as beckoning to passersby and waving to motorists, which could be occurring without any intent to engage in criminal activity. Thus, the ordinance affects and chills constitutionally protected activity.
....
We find that it is impossible to preserve the constitutionality of the Tampa ordinance without effectively rewriting it, and we decline to "legislate" in that fashion. Courts may not go so far in their narrowing constructions so as to effectively rewrite legislative enactments. News-Press Publishing Co., 538 So.2d at 460; Brown v. State, 358 So.2d 16, 20 (Fla.1978). Even if we were to find that the ordinance could be preserved facially by writing in requirements of specific intent to engage in prohibited activity and sufficient overt activity to clearly manifest that intent, the ordinance still would be subject to unconstitutional application. A series of adjudications limiting the application of *1020 the ordinance would be unacceptable because it would result in a chilling effect on protected speech during the pendency of judicial proceedings delineating the contours of the ordinance. Board of Airport Commissioners v. Jews for Jesus, Inc., 482 U.S. 569, 576[, 107 S.Ct. 2568, 96 L.Ed.2d 500] (1987).
Wyche, 619 So.2d at 234-36 (footnotes omitted).
In respect to the statute's vagueness, we explained:
Moreover, we also find merit in Wyche's argument that the ordinance is unconstitutionally vague. The principles of the vagueness doctrine address compliance with the concept of due process. Southeastern Fisheries, 453 So.2d at 1353; see also State v. Wershow, 343 So.2d 605, 608 (Fla.1977) (noting that vague statutes violate article I, section 9 of the Florida Constitution). A statute or ordinance is void for vagueness when, because of its imprecision, it fails to give adequate notice of what conduct is prohibited. Thus, it invites arbitrary and discriminatory enforcement. Art. I, § 9, Fla. Const.; Southeastern Fisheries. As the United States Supreme Court has noted:
Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to "`steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked."

Grayned v. City of Rockford, 408 U.S. 104[, 92 S.Ct. 2294, 33 L.Ed.2d 222] (1972) (citations omitted); see also Kolender v. Lawson, 461 U.S. 352, 358[, 103 S.Ct. 1855, 75 L.Ed.2d 903] (1983) ("the more important aspect of the vagueness doctrine `is not actual notice, but the other principal element of the doctrine  the requirement that a legislature establish minimal guidelines to govern law enforcement'") (quoting Smith v. Goguen, 415 U.S. 566, 574[, 94 S.Ct. 1242, 39 L.Ed.2d 605] (1974)); Wershow, 343 So.2d at 609 ("To force one to act at one's peril is against the very foundation of our American system of jurisprudence").
Wyche, 619 at 236-37.
In respect to substantive due process, we stated:
The ordinance also violates substantive due process because, as we have discussed, it may be used to punish entirely innocent activities. Art. I, § 9; State v. Saiez, 489 So.2d 1125, 1129 (Fla.1986). As drafted, the ordinance without question "unjustifiably transgresses the fundamental restrictions on the power of government to intrude upon individual rights and liberties." State v. Walker, 444 So.2d 1137, 1138 (Fla. 2d DCA 1984), adopted, 461 So.2d 108 (Fla.1984). Thus, it is impossible to say that the ordinance bears a reasonable relation to a permissible legislative objective *1021 and is not discriminatory, arbitrary, or oppressive. Lasky v. State Farm Ins. Co., 296 So.2d 9 (Fla.1974).
Wyche, 619 So.2d at 237.
Section 843.085(1), Florida Statutes, makes it a crime for an individual to exhibit, wear, or display any indicia of authority, or any colorable imitation thereof, of any federal, state, county, or municipal law enforcement agency or to display in any manner or combinations the word or words "police," "patrolman," "agent," "sheriff," "deputy," "trooper," "highway patrol," "Wildlife Officer," "Marine Patrol Officer," "state attorney," "public defender," "marshal," "constable," or "bailiff," which could deceive a reasonable person into believing that such item is authorized by any of the agencies described. The statute has no intent-to-deceive element but, rather, requires only a general intent. Thus, an individual wearing a shirt containing one of the specified words, even in combination with other words, is subject to prosecution under the statute.
In the decision below, the Second District held that the section did not prohibit expressions of support or disdain for law enforcement and thus only limited incidental amounts of protected expression. Sult, 839 So.2d at 803. The court held that the message conveyed by wearing a shirt might be conveying one's support for the police department or might be identifying oneself as belonging to the police department. Id. However, this analysis demonstrates the problem with the broad reach of the statute.
The word "police" on a shirt could mean support for the police, as has been widely seen on clothing in support of the New York Police Department following September 11, 2001. The word "police" on a shirt also could be used to express a negative opinion about police conduct if used in combination with a depiction of police committing a wrong in a traffic arrest. The word "sheriff" could have a political meaning when worn at a political rally involving a campaign for sheriff. The words could be on costumes and have a frivolous meaning, as pointed out by the Third District. Rodriguez, 906 So.2d at 1089 n. 3.
With no specific intent-to-deceive element, the section extends its prohibitions to innocent wearing and displaying of specified words. The reach of the statute is not tailored toward the legitimate public purpose of prohibiting conduct intended to deceive the public into believing law enforcement impersonators. The "could deceive a reasonable person" element of section 843.085(1), in conjunction with the prohibition of a display in any manner or combination of the words listed in the statute, results in a virtually boundless and uncertain restriction on expression. Thus, similar to the Tampa ordinance that was the subject of the Wyche decision, section 843.085(1) is overbroad because it reaches a substantial amount of constitutionally protected conduct. See Southeastern Fisheries Ass'n, Inc. v. Dep't of Natural Res., 453 So.2d 1351, 1353 (Fla.1984).
We agree with the following statement of the Third District:
Likewise, we conclude in the instant case that in the absence of an intent or scienter requirement, section 843.085(1) is constitutionally infirm because it makes no distinction between the innocent wearing or display of law enforcement indicia from that designed to deceive the reasonable public into believing that such display is official. While there is certainly a legitimate interest in ensuring that the public not be deceived by law enforcement impersonators, we conclude that this statute must be narrowly tailored with an intent requirement so as not to run afoul of the rights guaranteed by the First Amendment.
Rodriguez, 906 So.2d at 1089-90.
*1022 Nonetheless, because application of the overbreadth doctrine is "strong medicine," it should be employed sparingly by courts. Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute. Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). We conclude, however, that the overbreadth underlying this statute is substantial and incapable of a narrower construction because there is no logical way to read a specific intent element into the statute as it is currently written. The plain language of the statute indicates that any individual who wears or displays any indicia of authority which could deceive a reasonable person into believing that such item is authorized has committed a misdemeanor in the first degree. As written, the statute plainly requires the individual to merely possess the general intent to wear or display the item. As with the ordinance in Wyche, we could not construe section 843.085(1) otherwise "without effectively rewriting it, and we decline to `legislate' in that fashion." Wyche, 619 So.2d at 236. Thus, section 843.085(1) is unconstitutionally overbroad. See also Virginia v. Black, 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (holding cross-burning statute unconstitutional because the statute did not require that the cross burning be done with the intent to intimidate, which was the purpose underlying the statute); Robinson v. State, 393 So.2d 1076 (Fla.1980) (holding statute that made it an offense to wear a mask or hood that concealed identity unconstitutionally overbroad because law was susceptible of being applied to entirely innocent activities).
We also find section 843.085(1) to be vague and in violation of substantive due process. Section 843.085(1), because of its imprecision, again as with the ordinance that was the subject of the Wyche decision, fails to give fair notice of what conduct is prohibited. The statute fails to delineate when the displaying or wearing of the prohibited words will subject the person to prosecution, thus inviting arbitrary and discriminatory enforcement and making entirely innocent activities subject to prosecution. Wyche, 619 So.2d at 237.
We do not agree with the Second District's reliance on our decisions in Reynolds v. State, 842 So.2d 46 (Fla.2002); L.B. v. State, 700 So.2d 370 (Fla.1997); or Bouters v. State, 659 So.2d 235 (Fla.1995). Section 784.048, Florida Statutes (Supp.1992), Florida's stalking statute, which was the subject of Bouters, did not have the flaw we find in section 843.085(1). The stalking statute had a narrow focus upon "any person who willfully, maliciously, and repeatedly harasses another person." As we found in Bouters, "stalking, whether by word or deed, falls outside the First Amendment's purview." Bouters, 659 So.2d at 237. Even though the statute did not define "harass," we found that the statute was not unconstitutionally vague because it contained the requisite "willful, malicious, and repeated" element. Section 843.085(1) does not have a similar intent element.
In L.B., section 790.001(13), Florida Statutes (1995), was the subject of constitutional attack. This attack was based upon the statute's lack of a definition of "common pocketknife." We upheld the constitutionality of the statute, finding that the statute would be construed giving the words their plain and ordinary meaning. L.B., 700 So.2d at 372. We conclude that this is plainly different from the issue of vagueness in respect to section 843.085(1) because section 843.085(1) potentially reaches constitutionally protected expression and has no specific intent-to-deceive *1023 element. These factors were not involved in L.B.
In Reynolds, section 828.12, Florida Statutes (1997), prohibiting cruelty to animals, was upheld against a substantive due process attack. We found the cruelty to animals statute contained a requirement of general intent. However, we also found that the "general intent to commit an act ... is obviously reasonably related to the harm sought to be avoided." Reynolds, 842 So.2d at 51. We do not find such a reasonable relationship to be obvious in section 843.085(1).
We point out that there is a Florida statute criminalizing the false impersonation of an officer, section 843.08, Florida Statutes (2004),[4] which is not implicated in this case.
For the foregoing reasons, we answer the certified question in the affirmative, quash Sult, and approve Rodriguez. We remand this case to the district court for further consideration consistent with this opinion.
It is so ordered.
PARIENTE, C.J., and ANSTEAD, LEWIS, and QUINCE, JJ., concur.
CANTERO, J., dissents with an opinion, in which BELL, J., concurs.
CANTERO, J., dissenting.
I disagree with the majority that the statute at issue, section 843.085, Florida Statutes (2001), is unconstitutional. The statute simply prohibits an unauthorized person from wearing what is or appears to be an official law enforcement uniform in such a way that others could reasonably believe a law enforcement agency authorized the wearer to use its uniform. Such a narrow regulation does not infringe on constitutionally protected speech. To the contrary, it permits a wide spectrum of speech regardless of content. I would answer the certified question "no" and approve the well-reasoned decision of the Second District Court of Appeal finding the statute constitutional.
The majority holds that the statute is overbroad, vague, and contrary to substantive due process requirements. Because each issue requires independent analysis, I will address them in turn.

I. OVERBREADTH
The majority holds that the statute is overbroad because it prohibits innocent conduct  displaying words such as "police" on a shirt  and thus unconstitutionally inhibits protected speech. Majority op. at 1021. But the statute proscribes the use of such words only when (1) they appear on an "authorized indicia of authority," such as an official uniform shirt of a law enforcement agency, or a "colorable imitation thereof"; (2) the person wearing or displaying the item is not authorized to wear it; and (most importantly) (3) a reasonable observer could erroneously be led to believe that the person wearing the *1024 shirt actually is a law enforcement officer or is otherwise authorized to use this official indicia of authority. Such a narrow proscription does not inhibit any protected speech, and even if it did, the substantial state interest involved  ensuring that only legitimate law enforcement officials are considered such  more than justifies such a minimal intrusion. The majority's parade of horribles where the statute prohibits protected speech does not withstand analysis.
To demonstrate why the statute is not unconstitutionally overbroad, I will (A) review the Supreme Court cases explaining the parameters for determining overbreadth; (B) apply those parameters to the statute at issue here; and (C) examine cases applying an overbreadth analysis to similar statutes.

A. The Law on Overbreadth
The doctrine of overbreadth protects against unconstitutional restrictions that may inhibit the exercise of protected First Amendment rights. Thus, a statute may be constitutionally overbroad if it "sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments." Grayned v. City of Rockford, 408 U.S. 104, 115, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). To ensure that First Amendment rights are not unduly burdened, the doctrine requires that laws restricting these rights "must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." Broadrick v. Oklahoma, 413 U.S. 601, 611-12, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Because of the importance of the interests this doctrine protects, litigants need not meet the traditional requirement of standing. Broadrick, 413 U.S. at 612, 93 S.Ct. 2908; Grayned, 408 U.S. at 114, 92 S.Ct. 2294. Even "an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face" on the ground that the rights of others not before the court may be unconstitutionally inhibited. Bd. of Airport Comm'rs v. Jews for Jesus, Inc., 482 U.S. 569, 574, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987).
Despite such a loose standing requirement, the Supreme Court has emphasized that the application of the overbreadth doctrine is "manifestly, strong medicine" that must be employed "sparingly" and as a "last resort." Broadrick, 413 U.S. at 613, 93 S.Ct. 2908. To be considered overbroad, the law in question must pose "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections" of parties not before the Court. Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (emphases added). Accordingly, in considering an overbreadth challenge, a court must determine whether the statute inhibits First Amendment rights and, if so, whether the impact on such rights is substantial. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). If the statute does not "reach[] a substantial amount of constitutionally protected conduct," then the overbreadth claim fails. Id.
It is true that conduct may at times be sufficiently expressive to implicate the First Amendment. See Virginia v. Black, 538 U.S. 343, 358, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) ("The First Amendment affords protection to symbolic or expressive conduct as well as to actual speech."); see also Texas v. Johnson, 491 U.S. 397, 406, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (invalidating a statute that criminalized the burning of the American flag as an infringement on free speech). The Supreme Court, however, has rejected the idea "that an apparently limitless variety *1025 of conduct can be labeled `speech' whenever the person engaging in the conduct intends thereby to express an idea." United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). To determine whether particular conduct involves sufficient communicative elements to invoke the First Amendment, the Supreme Court considers whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." Johnson, 491 U.S. at 404, 109 S.Ct. 2533 (quoting Spence v. Washington, 418 U.S. 405, 410-11, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974)).
Finally, although some conduct may implicate the First Amendment, such "[s]ymbolic expression ... may be forbidden or regulated." Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 294, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). The United States Supreme Court analyzes whether a statute that prohibits conduct unconstitutionally burdens free speech under the following test:
[W]e think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.
O'Brien, 391 U.S. at 377, 88 S.Ct. 1673 (emphasis added); accord Clark, 468 U.S. at 294, 104 S.Ct. 3065 (citing O'Brien). "It is, in short, not simply the verbal or nonverbal nature of the expression, but the governmental interest at stake, that helps to determine whether a restriction on that expression is valid." Johnson, 491 U.S. at 406-07, 109 S.Ct. 2533.
The Florida statute clearly meets these requirements, as I explain below.

B. The Florida Statute
Several Florida statutes prohibit unauthorized uses of law enforcement and military uniforms. For example, section 250.43(2), Florida Statutes (2004), is almost identical to the federal armed services uniform ban contained in 18 U.S.C. § 702 (2000), which the Supreme Court held valid in Schacht v. United States, 398 U.S. 58, 61, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970).[5] The statute prohibits everyone except members of our armed forces from wearing any part of any service branch's uniform, or an imitation of it, except as provided by law. § 250.43(2), Fla. Stat. (2004) (making unauthorized wearing a misdemeanor offense); see also § 321.02, Fla. Stat. (2004) (directing the Department of Highway Safety and Motor Vehicles to "prescribe a distinctive uniform and distinctive emblem to be worn by all officers," and providing that it "shall be unlawful for any other person or persons to wear a similar uniform or emblem, or any part or parts thereof"); § 30.46(4), Fla. Stat. (2004) (prohibiting anyone but sheriffs and their deputies from wearing an official sheriff's badge or insignia or wearing a badge or insignia of such similarity that it is "indistinguishable" from twenty feet away); § 250.43(1) (prohibiting unauthorized persons from wearing the uniform or insignia of the Florida National Guard). The State regulates even the wearing of uniforms of retired or deceased law enforcement officers. See § 112.193(4), Fla. Stat. (2004) (providing that a single uniform and badge of a law enforcement officer may be awarded to a retiring employee or to the family of a deceased officer, but that such items are presented "to commemorate *1026 prior service and must be used only in such manner as the employer prescribes by rule"). Finally, section 843.085(3) prohibits unauthorized persons from selling governmentally authorized law enforcement indicia of authority, except to authorized law enforcement personnel.
These statutes, including the statute at issue here, address only conduct. Section 843.085(1), provides as follows:
It is unlawful for any person:
(1) Unless appointed by the Governor pursuant to chapter 354, authorized by the appropriate agency, or displayed in a closed or mounted case as a collection or exhibit, to wear or display any authorized indicia of authority, including any badge, insignia, emblem, identification card, or uniform, or any colorable imitation thereof, of any federal, state, county, or municipal law enforcement agency, or other criminal justice agency as now or hereafter defined in s. 943.045, which could deceive a reasonable person into believing that such item is authorized by any of the agencies described above for use by the person displaying or wearing it, or which displays in any manner or combination the word or words "police," "patrolman," "agent," "sheriff," "deputy," "trooper," "highway patrol," "Wildlife Officer," "Marine Patrol Officer," "state attorney," "public defender," "marshal," "constable," or "bailiff," which could deceive a reasonable person into believing that such item is authorized by any of the agencies described above for use by the person displaying or wearing it.
By its express terms, the statute prohibits persons not authorized by the governor or law enforcement agencies from "wearing" or "displaying" the official criminal justice agency insignia (or colorable imitations thereof) in such a way that a reasonable person could be deceived into believing the wearer or displayer to be authorized by law enforcement to use this official insignia and symbol of governmental authority. Even the prohibition on the use of specific words applies only when the words appear on governmentally authorized insignia, or a colorable imitation, and could deceive a reasonable observer into believing the wearer to be so authorized by a law enforcement agency.
To reiterate, under O'Brien a statute that regulates conduct but also affects some speech is nevertheless valid if it is within the constitutional power of the government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. 391 U.S. at 377, 88 S.Ct. 1673. Assuming for the moment that O'Brien applies because the statute here regulates some speech  a premise I dispute  the Florida statute nevertheless meets the requirements of O'Brien. The State certainly has the authority to regulate the conduct the statute addresses  the unauthorized wearing of official law enforcement insignia. The law furthers an important governmental interest  protecting unwitting citizens from people passing themselves off as or appearing to be law enforcement personnel through the unauthorized use of the official symbols of government authority. The statute's obvious intent is to preserve the use of the indicia of law enforcement authority to those authorized to exercise such powers. No one can deny that this is a substantial state interest. Also, the government's interest is unrelated to the suppression of free speech. Citizens are free to express any view they please about law enforcement. Rather, the statute ensures that only law enforcement agents appear to be such. *1027 Finally, any incidental effect on speech is no greater than is essential to the furtherance of the government's interest. In fact, I can find no effect on speech at all, incidental or otherwise. Dressing like a police officer in such a way that others reasonably could be deceived into believing the person to be a police officer never has been protected under the First Amendment.
The majority holds the statute unconstitutional because, it claims, the statute prohibits some politically expressive conduct. Majority op. at 1021. The majority holds the statute to too high a standard, however, and one which no other court employs. The Supreme Court has explained the connection between regulating conduct and speech:
But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct  even if expressive  falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect  at best a prediction  cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.

Broadrick, 413 U.S. at 615, 93 S.Ct. 2908 (citation omitted) (emphasis added). In Broadrick itself, the challenged statute validly prohibited many activities, but it also forbade constitutionally protected exercises. Nevertheless, the Court found it unnecessary to invalidate the statute on its face, holding that improper applications of the statute could be dealt with as the situation arose. Id. at 618, 93 S.Ct. 2908.
Clearly, the measure of a statute's overbreadth is not whether it may possibly prohibit some speech. As the Supreme Court has warned, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." Taxpayers for Vincent, 466 U.S. at 800, 104 S.Ct. 2118. Rather, a statute's overbreadth must be both real and substantial. Broadrick, 413 U.S. at 615, 93 S.Ct. 2908; see also Village of Hoffman Estates, 455 U.S. at 494, 102 S.Ct. 1186 (noting, in this context, that "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct"); City of Houston v. Hill, 482 U.S. 451, 458, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (same).
Even if the majority were correct that a negligible infringement on protected speech is sufficient to doom a statute, the majority must misread the statute to find such an infringement here. Contrary to the majority's interpretation, nowhere does the statute prohibit protected speech. The majority cites some examples of constitutionally protected activity that it claims the statute prohibits. Majority op. at 1021. These include wearing a shirt with the word "police" on it "in combination with a depiction of police committing a wrong in a traffic arrest"; the word "sheriff" *1028 worn at a political rally involving a campaign for sheriff; and similar words on costumes that have a frivolous meaning. Id. Again, assuming that all these examples are constitutionally protected, the statute prohibits none of them. The mere wearing of a shirt with the word "police" on it does not, as the majority claims, violate the statute. Depictions of police officers in skits or movies do not violate it. Nor does attending a costume party dressed as a police officer. Moreover, any kind of political speech is permitted. Anything on a shirt from "support your local Sheriff" to "the police stink" is fair game. Cf. Cohen v. California, 403 U.S. 15, 26, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (finding that the First Amendment was implicated in a criminal prosecution for wearing a jacket that said "Fuck the Draft" and reversing the conviction). Children may wear shirts bearing the word "police," as can a group attending a pro-(or anti-) law enforcement rally. The statute prohibits only wearing an official uniform shirt, or colorable imitation, with the word "police" on it in a way that essentially says to a reasonable observer, "I am the police."[6] But a statement by someone not a law enforcement official that he is one or has authority to use these official indicia of government authority has never been held to be protected speech, nor should it be. Cf. Gertz v. Robert Welch, Inc., 418 U.S. 323, 340, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (stating that "there is no constitutional value in false statements of fact" and that "[t]hey belong to that category of utterances which `are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality'"); see also City of Daytona Beach v. Del Percio, 476 So.2d 197, 202 (Fla.1985) (emphasizing that "the right to dress as one pleases, vis-à-vis style and fashion, has little or no first amendment implications").
Sult does not argue that she intended to convey a political or any other expressive message. The majority, too, fails to identify any political message inherent in displaying the word "police" on a shirt in a manner "which could deceive a reasonable person into believing that such item is authorized for use by the person wearing it." Instead, to hold the statute unconstitutional, the majority must first delete the language quoted in the foregoing sentence, ignore the requirement that the word appear on governmentally authorized "indicia of authority," and then conclude that wearing a shirt with the word "police" does, in many cases, convey a political message that most people viewing it would understand. See Johnson, 491 U.S. at 404, 109 S.Ct. 2533. In other words, the majority ignores that the statute itself excepts those very circumstances from its operation.

C. Cases Interpreting Similar Statutes
The Supreme Court has upheld similar statutes that regulate conduct but which are claimed to abridge First Amendment rights. In O'Brien, discussed above, the Court considered whether a federal statute prohibiting the "knowing[ ] destr[uction]" of a Selective Service card violated the First Amendment. 391 U.S. at 375, 88 S.Ct. 1673. O'Brien burned his draft card in an antiwar demonstration. The Court noted that on its face, the statute regulated conduct, not speech, and did not abridge the First Amendment. The Court stated, however, that "when `speech' and `nonspeech' elements are combined in the same course of conduct, a sufficiently important *1029 governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." Id. at 376, 88 S.Ct. 1673. Addressing O'Brien's claim that the statute was unconstitutional as applied and as enacted because Congress's purpose was to abridge free speech, the Court applied the test discussed earlier. Id. at 377, 88 S.Ct. 1673; see Johnson, 491 U.S. at 407, 109 S.Ct. 2533 (noting that the O'Brien standard is limited "to those cases in which `the governmental interest is unrelated to the suppression of free expression'"). The Court held the statute met all of these requirements and upheld the conviction. Id.; cf. Regan v. Time, Inc., 468 U.S. 641, 648-49, 655-56, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984) (holding unconstitutional as impermissibly content-based a federal statute prohibiting the photographic reproduction of U.S. currency except for "historical," "newsworthy," or certain other purposes, but upholding the statute's size and color requirements for permissible reproductions as reasonable time, place, or manner restrictions).
The Court subsequently upheld against a First Amendment challenge a federal statute similar to section 843.085(1), although it struck part of a related statute. In Schacht v. United States, 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970), the Court considered whether a conviction for wearing parts of a U.S. Army uniform without authorization violated the First Amendment. The defendant, who was not in the military, performed in a skit at an antiwar rally while wearing an official U.S. Army shirt with a shoulder patch and a military hat with the then-current official insignia of Army officers. He was convicted under the following statute:

Whoever, in any place within the jurisdiction of the United States or in the Canal Zone, without authority, wears the uniform or a distinctive part thereof or anything similar to a distinctive part of the uniform of any of the armed forces of the United States, Public Health Service or any auxiliary of such, shall be fined not more than $250 or imprisoned not more than six months, or both.

18 U.S.C. § 702 (1964) (emphasis added). The defendant claimed that he was authorized to wear the uniform under a separate provision, which permitted an "actor in a theatrical or motion-picture production" to wear the uniform "[w]hile portraying" a member of the armed forces. Id. at 59-60, 90 S.Ct. 1555 (quoting 10 U.S.C. § 772(f) (1964)).
The Court first addressed the validity of the statute prohibiting anyone from wearing an armed forces uniform without authorization. Citing O'Brien, the Court stated that its "previous cases would seem to make it clear that 18 U.S.C. § 702, making it an offense to wear our military uniforms without authority is, standing alone, a valid statute on its face." Schacht, 398 U.S. at 61, 90 S.Ct. 1555. The Court thus recognized that the government had the authority to regulate who could wear all or even part of its armed services uniforms.
The Court in Schacht did invalidate a clause in the separate "actor's exemption," which authorized actors to wear armed services uniforms, but only if they portrayed the military in a positive light:
When wearing [of military uniforms] by persons not on active duty authorized.
. . . .
(f) While portraying a member of the Army, Navy, Air Force, or Marine Corps, an actor in a theatrical or motion-picture may wear the uniform of that armed force if the portrayal does not tend to discredit that armed force.

10 U.S.C. § 772(f) (1964) (emphasis added). The Court explained that

*1030 [t]his clause on its face simply restricts § 772(f)s authorization to those dramatic portrayals that do not "tend to discredit" the military, but, when this restriction is read together with 18 U.S.C. § 702, it becomes clear that Congress has in effect made it a crime for an actor wearing a military uniform to say things during his performance critical of the conduct or policies of the Armed Forces.
398 U.S. at 62, 90 S.Ct. 1555. In other words, the statute exempted only actors positively portraying the military. This was clearly a content-based restriction on speech. Important for this discussion, the Court invalidated only the clause prohibiting an actor from discrediting the military. Id. at 63, 90 S.Ct. 1555.
Finally, in State v. McLamb, 188 Ariz. 1, 932 P.2d 266, 271-72 (Ct.App.1997), the defendant challenged on First Amendment grounds his conviction for the unauthorized wearing of a city's police insignia under an ordinance similar to section 843.085. The defendant was a retired Phoenix police officer. He was arrested operating a booth at a gun show while wearing his police "retirement uniform" with its official department insignia shoulder patches. Id. at 268. The city ordinance at issue made it unlawful "for any person to wear a fireman's or policeman's badge or insignia, or the badge or insignia of any public officer or inspector of the City when not properly authorized to wear such badge or insignia." Id. at 269 (quoting Phoenix, Ariz., City Code § 23-21). Relying on Schacht, the court rejected the defendant's claim that the ordinance facially violated the First Amendment's guarantee of free speech. The court noted that, unlike the actor exemption in Schacht, the ordinance was not content-based and thus "prohibit[ed] the unauthorized wearing of an official insignia without regard to a particular expressive activity or the political viewpoint communicated by the wearer." McLamb, 932 P.2d at 272. Because of the context in which he wore the insignia, however, the court determined that his conduct was expressive. McLamb had adorned his gun show booth with banners declaring, e.g., "Police Support Your Right to Bear Arms," and testified that he wore the uniform to convey to others that he was a former officer who advocated a particular, political agenda. Id. at 273. Noting that on its face the ordinance was unrelated to the suppression of free speech, however, the court applied O'Brien and held the ordinance valid. 932 P.2d at 274. The court also held that the ordinance was not overbroad. The law was not directed at a particular group, did not censor any viewpoint, and did not "significantly infringe" on the First Amendment right of free speech. Id. at 275 (citing Broadrick, 413 U.S. at 616, 93 S.Ct. 2908).
As these cases demonstrate, the government may constitutionally prohibit certain conduct even if it incidentally affects speech. Yet in holding the Florida statute unconstitutionally overbroad, the majority analyzes none of these cases. Instead, it quotes several pages from our decision in Wyche v. State, 619 So.2d 231, 234-36 (Fla.1993). Majority op. at 1018-20. Contrary to the majority's assertion, however, Wyche does not apply in this context. In Wyche, this Court was concerned that the loitering statute potentially applied to protected freedoms, such as "chatting on a public street" and "strolling aimlessly." Id. at 235. Unlike the conduct in Wyche, however, neither the unauthorized use of an official law enforcement uniform nor giving the false impression that one is a law enforcement officer is an otherwise innocuous activity. Nor is it a ubiquitous activity in which each citizen is entitled to engage, such as chatting and strolling. Rather, this case involves a statute, like the one in Schacht, which reserves the use of official uniforms and other indicia of *1031 government authority to those authorized to use that authority.

II. VAGUENESS
The majority next holds that the statute is unconstitutionally vague, again quoting Wyche. Majority op. at 1020-21. In Grayned, the United States Supreme Court explained the standards for evaluating whether a statute is unconstitutionally vague:
It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut(s) upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of (those) freedoms." Uncertain meanings inevitably lead citizens to "`steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked."
408 U.S. at 108-09, 92 S.Ct. 2294 (footnotes omitted). The vagueness doctrine "simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 32-33, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).
Ordinarily, a complainant must show a law is unconstitutionally vague in all of its applications; thus, "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). In this case, Sult knowingly wore an official Pinellas County Sheriff's shirt, and when asked for identification, she presented that office's authorized identification card, neither of which she was authorized to do. Thus, she clearly violated the express terms of the statute. Sult alleges, however, and the majority finds, that the statute "potentially reaches constitutionally protected expression." Majority op. at 1022.
A vagueness analysis must consider a claim that the statute impinges on First Amendment rights. See Kolender v. Lawson, 461 U.S. 352, 358 n. 8, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); see also Village of Hoffman Estates, 455 U.S. at 494-95, 102 S.Ct. 1186 (stating that the court should examine a facial vagueness challenge "and assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is vague in all of its applications"). Where a law reaches a substantial amount of conduct protected by the First Amendment, the Court requires "more precision in drafting" and applies a more stringent vagueness test, Parker v. Levy, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), and may permit a complainant whose speech is unprotected to challenge the law. Cf. Young v. Am. Mini Theatres, Inc., 427 U.S. 50, 61, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (rejecting a facial vagueness challenge by complainants whose speech was unprotected because the law's limited impact on protected speech, the limited uncertainty in the ordinances, *1032 and the potential for a narrowing construction made it "an inappropriate case in which to adjudicate the hypothetical claims of persons not before the Court"). As explained above, however, this statute does not prohibit any, much less a substantial amount of, constitutionally protected conduct. Nor was Sult herself engaged in protected speech, and the statute plainly prohibited her conduct. Therefore, she has no standing to assert a hypothetical vagueness claim. See Young, 427 U.S. at 61, 96 S.Ct. 2440. Even if she did have standing, however, the statute survives a vagueness challenge.
The three questions in any vagueness challenge are (A) whether the law provides fair notice to the ordinary person of what is and is not prohibited; (B) whether the law provides minimal guidelines for determining guilt or compliance so that arbitrary and discriminatory enforcement is discouraged; and (C) whether the law interferes with the exercise of constitutionally protected rights such as free speech. See Grayned, 408 U.S. at 108-09, 92 S.Ct. 2294. To demonstrate that section 843.085 is not unconstitutionally vague, I will address each question in turn.

A. Fair Notice
The first question in a vagueness challenge is whether the law provides fair notice to the ordinary person of what is and is not prohibited. See Grayned, 408 U.S. at 108-09, 92 S.Ct. 2294. The majority holds that a person of common understanding is left to guess at what items fall within the statute's prohibition. I disagree. As stated above, the statute prohibits the unauthorized wearing or displaying of "authorized indicia of authority, including any badge, insignia, emblem, identification card, or uniform." § 843.085(1), Fla. Stat. The statute also prohibits the unauthorized wearing or display of "authorized indicia of authority" which display specifically listed words (police, patrolman, agent, sheriff, deputy, trooper, highway patrol, Wildlife Officer, Marine Patrol Officer, state attorney, public defender, marshal, constable, or bailiff). By listing the items covered and the specific words prohibited, and by using commonly understood words, the statute plainly leaves little room for guesswork by anyone concerned about the items covered. See United States v. Powell, 423 U.S. 87, 94, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975) ("The fact that [the Legislature] might, without difficulty, have chosen `[c]learer and more precise language' equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague."). The statute also prohibits the wearing or display of "any colorable imitation" of these items. The word "colorable" means "seemingly valid or genuine" and "intended to deceive." Merriam-Webster's Collegiate Dictionary 226 (10th ed.2001). Finally, the statute prohibits only unauthorized use of the items. People certainly can be presumed to know whether or not a governmental law enforcement entity has authorized them to use its official uniform or act as governmental agents. As the Supreme Court has stated, "although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." Broadrick, 413 U.S. at 608, 93 S.Ct. 2908.

B. Arbitrary Enforcement
The second concern in a vagueness challenge is whether the law provides minimal guidelines for determining guilt or compliance so that arbitrary and discriminatory enforcement is discouraged. See Grayned, 408 U.S. at 108-09, 92 S.Ct. 2294. This consideration is the "more important aspect of the vagueness doctrine." Kolender, *1033 461 U.S. at 358, 103 S.Ct. 1855. The majority holds that the statute invites arbitrary and discriminatory enforcement. Majority op. at 1022. Again, I disagree.
As stated above, the statute clearly lists the items prohibited, and an officer can understand them as well as any other person. Further, a prohibited item must be worn in such manner that it could "deceive a reasonable person into believing such item is authorized" by the government for the person's use. In other words, a reasonable person could believe the wearer to be a government agent. The statute thus establishes an objective standard for enforcement and provides an adequate guideline for a jury determination of guilt. We have regularly upheld against vagueness challenges statutes using a "reasonable person" or objective standard. See Bouters v. State, 659 So.2d 235, 238 (Fla.1995) (upholding a stalking statute, holding that a reasonable person standard provided an objective standard for determining guilt); see also State v. Manfredonia, 649 So.2d 1388, 1389 (Fla.1995) (upholding a statute requiring that a person take "reasonable steps" to avoid criminal liability); Smith v. State, 237 So.2d 139, 140-41 (Fla.1970) (upholding a statute making it "unlawful to operate such a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards there existing").
The reasonable person standard is one with which police officers have more than a passing familiarity and therefore can apply without difficulty. See Schmitt v. State, 590 So.2d 404, 409 (Fla.1991) (explaining that "probable cause" means "a reasonable ground of suspicion supported by circumstances sufficiently strong to warrant a cautious person in the belief that the person is guilty of the offense charged" and that the "reasons cited by the police must be sufficient to create a reasonable belief that a crime has been committed").
The statute here does not invite discriminatory enforcement, as did the California law invalidated in Kolender. The statute in that case permitted officers to conduct a Terry[7] stop and to require persons observed loitering or wandering the streets to provide "credible and reliable" identification and to "account" for their presence in the area. Kolender, 461 U.S. at 353, 103 S.Ct. 1855. The law allowed the stop "if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification." Id. at 353 n. 1, 103 S.Ct. 1855 (quoting Cal.Penal Code § 647(e) (West 1970)). Although the Court invalidated the statute, it specifically found that the reasonable person standard for stopping and requesting identification was adequate, noting that "the initial detention [was] justified." Id. at 361, 103 S.Ct. 1855. The Court took issue only with the lack of standards for determining how one satisfied the identification and accountability requirements. A "suspect violate[d] [the statute] unless `the officer [was] satisfied that the identification [was] reliable.'" Id. at 360, 103 S.Ct. 1855.
Thus, a statute is not impermissibly vague because an officer has discretion to determine whether to arrest someone for violating it. The question is whether a statute provides a sufficient, objective standard for an officer to determine that there is probable cause for an arrest and for a jury to determine guilt. As we explained in L.B. v. State, 700 So.2d 370, 372 (Fla.1997), the reasonable person standard *1034 "is precisely the gauge by which vagueness is to be judged."
The list of prohibited items in the statute and its requirement that, to violate the statute, unauthorized civilians must wear or use the items in such a way that the reasonable observer could believe them to be authorized to use the official trappings of governmental authority provide clear guidance. The statute thus gives ample notice in commonly understandable terms of what conduct is prohibited. It does not vest unbridled discretion in police officers in determining what constitutes a violation of the statute.

C. First Amendment Concerns
The final consideration in a vagueness challenge is whether the law interferes with constitutionally protected rights such as free speech. Grayned, 408 U.S. at 108-09, 92 S.Ct. 2294. If so, a more stringent vagueness test should be applied. See Village of Hoffman Estates, 455 U.S. at 499, 102 S.Ct. 1186. As explained previously, the First Amendment concerns the majority finds either do not exist at all or are negligible.
The majority compares the statute here to the loitering statute held unconstitutional in Wyche, apparently in the belief that the ordinary person will be unable to determine whether the statute applies to protected expression and innocent activities. See Village of Hoffman Estates, 455 U.S. at 497 n. 9, 102 S.Ct. 1186. (explaining that a vagueness challenge alleges that one cannot determine whether a regulation impinges innocent conduct). This statute, however, is light years away from the one we held void for vagueness in Wyche. I already have demonstrated that the government has authority to prescribe the uniform and insignia for its law enforcement officers and to limit the wearing of such to legitimate law enforcement officers. Unlike the innocent activity we protected in Wyche, 619 So.2d at 237 ("noting that `[m]any innocent people saunter on the streets and call to friends' "), no corresponding right exists to wear the authorized symbols of law enforcement.
The majority relies on Virginia v. Black, 538 U.S. at 343, 123 S.Ct. 1536, and Robinson v. State, 393 So.2d 1076 (Fla.1980), to support its conclusion that a statute criminalizing the wearing of law enforcement insignia must require specific intent. Majority op. at 1022. Those cases involved prohibitions on cross-burning or wearing an identity-concealing mask in public. Although "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice," Village of Hoffman Estates, 455 U.S. at 499, 102 S.Ct. 1186, there is no need for a specific intent requirement here. As Schacht demonstrates, the State may lawfully regulate the use of law enforcement uniforms and insignia, and a general intent to wear the uniform by one not authorized to do so is sufficient to meet constitutional requirements. A person not authorized to wear the official uniform (or its parts) of a law enforcement agency clearly knows that she is not a law enforcement agent or in any way authorized to use the official uniform and is presumed to know the prohibition against unauthorized use. See, e.g., Ellis v. State, 762 So.2d 912, 912 (Fla.2000) (recognizing that publication in the Laws of Florida or the Florida Statutes gives all citizens constructive notice of the consequences of their actions).
The conduct the statute regulates is not an "innocent activity" in the sense that Black and Robinson use the phrase. As demonstrated above, the statute does not address persons who wear law enforcement insignia in connection with pro- or anti-law enforcement rallies, political meetings, costume parties, or a host of other innocent activities. Rather, it addresses only those not so authorized who wear *1035 such items so that others could believe them to be real law enforcement officials. Thus, it does not interfere with the exercise of free speech rights.

III. SUBSTANTIVE DUE PROCESS
The majority finally holds that the statute violates substantive due process, see majority op. at 1021, 1022, although it provides little analysis on this point other than to quote Wyche. The Fourteenth Amendment of the United States Constitution and article I, section 9 of the Florida Constitution "protect against deprivations of life, liberty, or property" by guaranteeing to each person the right to both procedural and substantive due process. State v. Robinson, 873 So.2d 1205, 1212-13 (Fla.2004). These due process clauses "do not prevent the legitimate interference with individual rights under the police power, but do place limits on such interference." State v. Saiez, 489 So.2d 1125, 1127 (Fla.1986).
The "basic principle of substantive due process is to protect the individual from an abusive exercise of governmental powers." State v. Walker, 444 So.2d 1137, 1139 (Fla. 2d DCA) (emphasis added), affd, 461 So.2d 108 (Fla.1984). Thus, the state has "police power" to enact laws "reasonably construed as expedient for protections of the public health, safety, welfare, or morals." Saiez, 489 So.2d at 1127. The basic test for determining a violation of due process is "whether the state can justify the infringement of its legislative activity upon personal rights and liberties." In re Forfeiture of 1969 Piper Navajo, 592 So.2d 233, 235 (Fla.1992). Further, a statute cannot be unreasonable, arbitrary, or capricious, and it must bear a reasonable and substantial relation to a legitimate governmental objective. Robinson, 873 So.2d at 1214. "When a statute encroaches on fundamental constitutional rights, however, the statute also must be narrowly tailored to achieve the state's purpose." Id.
To state a substantive due process violation, Sult must first identify a constitutionally protected property or liberty interest of which she was deprived by the statute. The right to free speech is a protected liberty interest. See Gitlow v. New York, 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925) ("For present purposes we may and do assume that freedom of speech and of the press  which are protected by the First Amendment from abridgment by Congress  are among the fundamental personal rights and `liberties' protected by the due process clause of the Fourteenth Amendment from impairment by the States."). As demonstrated above, however, the statute does not violate Sult's right to free speech. She does not assert that she intended to convey any political message of support or disdain; the message she did convey, by wearing the official uniform shirt of the Pinellas County Sheriff's Office and by presenting an official identification card of that office, was only to falsely represent that she was authorized by the government to wear the shirt and to use the card.
Sult alternatively claims that she was engaged in the innocent behavior of wearing the official uniform shirt of the sheriff's office. Although I can discern no protected liberty interest, either fundamental or otherwise, that the statute violates, the majority has embraced Sult's claim that the statute has the effect of criminalizing "innocent activities" and infringing the First Amendment. See majority op. at 1022.
As to the first concern of substantive due process, the Legislature's goal in enacting section 843.085 was legitimate. The State has the police power both to define a uniform for its law enforcement agencies and to regulate who wears it. Further, it is uncontested that the State has an interest in protecting the public, ensuring that *1036 law enforcement officers are correctly identified, and preventing crimes by those using official-looking law enforcement apparel. Accordingly, the statute is rationally related to these purposes. See Walker, 444 So.2d at 1139 (stating that the substantive due process test requires a statute to be reasonably related to a permissible legislative purpose and not be discriminatory, arbitrary, or oppressive). As I have repeatedly explained above, the statute has no effect on First Amendment rights. Thus, I agree with the district court that the rational basis test applies here, but I must address the majority's requirement that the statute be narrowly tailored. See majority op. at 1021.
In holding that the statute violates substantive due process, the majority again relies on Wyche. See majority op. at 1021. In Wyche, we struck down an anti-loitering statute because it deterred previously convicted prostitutes from exercising the "inherent" right of all people to engage in "noncriminal routine activities," such as waving to friends and strolling down a sidewalk. 619 So.2d at 235. The majority here presumably does not include posing as a police officer or the unauthorized use of police badges and identification cards in this list of inherent rights. Instead, the majority is concerned with the "innocent" behavior of wearing police costumes at Halloween parties or wearing a shirt with the sole word "police" on it, which may or may not be intended to communicate a protected message. What is lacking in the statute, the majority concludes, is an element of specific intent. Although I previously addressed "specific intent" with regard to the vagueness claim, I address it here as well.
As we recently emphasized, the "Legislature generally has broad authority to determine any requirement for intent in the definition of a crime" and can "dispense with specific criminal intent when defining crimes." Reynolds v. State, 842 So.2d 46, 49, 51 (Fla.2002). In Reynolds, we upheld a statute providing that "[a] person who intentionally commits an act to any animal which results in the cruel death, or excessive or repeated infliction of unnecessary pain or suffering, or causes the same to be done" commits a third-degree felony. Id. at 47 (quoting § 828.12(2), Fla. Stat. (1997)). We acknowledged that this statute required only the general intent to commit an act and not the specific intent to cause the cruel death or unnecessary pain and suffering of an animal. Id. at 48. We concluded that the Legislature had authority to require only general intent, and had "put potential offenders on express notice of the intent required to violate" the statute. Id. at 51. Further, we found the general intent requirement to be "obviously reasonably related to the harm sought to be avoided." Id.
Section 843.085 also is a general intent statute. Under Schacht, the first part of the statute prohibiting unauthorized wearing or use of indicia of authority meets the requirements of substantive due process even without the limiting phrase "which could deceive a reasonable person into believing that such item is authorized . . . for use by the person displaying or wearing it." With it, however, the statute provides clearer notice that people cross the line between "innocent" and "criminal" conduct when they "wear" or "display" authorized insignia in public in such a way that they "could deceive a reasonable person" who sees or interacts with them into believing them to be government officers. If a person wears the prohibited items in such manner that a reasonable viewer could be deceived, then the person donning the attire certainly should recognize the effect of her appearance. Again, the item must be official law enforcement insignia, the wearer must not be authorized by the government *1037 to wear or use the item, and the wearer must sufficiently appear to be authorized to use the law enforcement badge or uniform that a reasonable person could be deceived into believing the wearer is so authorized. This clause and the knowledge requirements tailor the statute to effect the valid interests of the state. As courts have acknowledged, even "innocent" conduct may be limited or even prohibited to advance legitimate state interests. See D.P. v. State, 705 So.2d 593, 596 (Fla. 3d DCA 1997) (upholding an ordinance prohibiting minors from possessing spray paint or jumbo markers absent adult supervision). Nevertheless, this statute does not prohibit innocent conduct.

IV. CONCLUSION
For the reasons stated above, the statute is not overbroad or vague, and it does not violate substantive due process. Therefore, I would approve the Second District's opinion. I fear that today the Court has stripped law enforcement agencies of one important weapon in their battle against crime. I only hope that the legislature acts quickly to fill the void. I respectfully dissent.
BELL, J., concurs.
NOTES
[1] Section 843.085, Florida Statutes (2001), provides in pertinent part:

843.085. Unlawful use of police badges or other indicia of authority.  It is unlawful for any person:
(1) Unless appointed by the Governor pursuant to chapter 354, authorized by the appropriate agency, or displayed in a closed or mounted case as a collection or exhibit, to wear or display any authorized indicia of authority, including any badge, insignia, emblem, identification card, or uniform, or any colorable imitation thereof, of any federal, state, county, or municipal law enforcement agency, or other criminal justice agency as now or hereafter defined in s. 943.045, which could deceive a reasonable person into believing that such item is authorized by any of the agencies described above for use by the person displaying or wearing it, or which displays in any manner or combination the word or words "police," "patrolman," "agent," "sheriff," "deputy," "trooper," "highway patrol," "Wildlife Officer," "Marine Patrol Officer," "state attorney," "public defender," "marshal," "constable," or "bailiff," which could deceive a reasonable person into believing that such item is authorized by any of the agencies described above for use by the person displaying or wearing it.
....
(3) To sell, transfer, or give away the authorized badge, or colorable imitation thereof, including miniatures, of any criminal justice agency as now or hereafter defined in s. 943.045, or bearing in any manner or combination the word or words "police," "patrolman," "sheriff," "deputy," "trooper," "highway patrol," "Wildlife Officer," "Marine Patrol Officer," "marshal," "constable," "agent," "state attorney," "public defender," or "bailiff," which could deceive a reasonable person into believing that such item is authorized by any of the agencies described above, except for agency purchases or upon the presentation and recordation of both a driver's license and other identification showing any transferee to actually be a member of such criminal justice agency or unless the person is appointed by the Governor pursuant to chapter 354. A transferor of an item covered by this subsection is required to maintain for 2 years a written record of such transaction, including records showing compliance with this subsection, and if such transferor is a business, it shall make such records available during normal business hours for inspection by any law enforcement agency having jurisdiction in the area where the business is located.
(4) Nothing in this section shall prohibit a fraternal, benevolent, or labor organization or association, or their chapters or subsidiaries, from using the following words, in any manner or in any combination, if those words appear in the official name of the organization or association: "police," "patrolman," "sheriff," "deputy," "trooper," "highway patrol," "Wildlife Officer," "Marine Patrol Officer," "marshal," "constable," or "bailiff."
(5) Violation of any provision of this section is a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083. This section is cumulative to any law now in force in the state.
[2] The court gave the following example to illustrate its point:

For example, an individual who wears or displays unauthorized law enforcement apparel or indicia merely in observance of Halloween or as an actor in a play or film is in violation of this statute if a reasonable person could be deceived as to its authenticity. Moreover, in the aftermath of the "September 11th" tragedy, it has now become commonplace for many Americans to wear authentic-looking law enforcement t-shirts, caps and other paraphernalia merely out of reverence for the tragedy's heroes. All such persons would nevertheless be in violation of section 843.085(1). We believe that Floridians do enjoy the right to innocently wear or display such paraphernalia under both the Florida and U.S. Constitutions as long as they are not intentionally attempting to pass themselves off as law enforcement officials.
Rodriguez, 906 So.2d at 1089-90 n. 3.
[3] Section 24-61(A)(10) of the City of Tampa Code (1987) provided that it was unlawful for any person to:

Loiter, while a pedestrian or in a motor vehicle, in or near any thoroughfare or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting, or procuring another to commit an act of prostitution, sodomy, fellatio, cunnilingus, masturbation for hire, pandering, or other lewd or indecent act. Among the circumstances which may be considered in determining whether this purpose is manifested are: that such person is a known prostitute, pimp, sodomist, performer of fellatio, performer of cunnilingus, masturbator for hire or panderer and repeatedly beckons to, stops or attempts to stop, or engages passers-by in conversation, or repeatedly stops, or attempts to stop motor vehicle operators by hailing, waving of arms or any bodily gesture for the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution, sodomy, fellatio, cunnilingus, masturbation for hire, pandering, or other lewd or indecent act. No arrest shall be made for a violation of this subsection unless the arresting officer first affords such person the opportunity to explain this conduct, and no one shall be convicted of violating this subsection if it appears at trial that the explanation given was true and disclosed a lawful purpose.
Wyche, 619 So.2d at 233-34 n. 2 (emphasis omitted).
[4] Section 843.08 prohibits a person from falsely assum[ing] or pretend[ing] to be a sheriff, officer of the Florida Highway Patrol, officer of the Fish and Wildlife Conservation Commission, officer of the Department of Environmental Protection, officer of the Department of Transportation, officer of the Department of Corrections, correctional probation officer, deputy sheriff, state attorney or assistant state attorney, statewide prosecutor or assistant statewide prosecutor, state attorney investigator, coroner, police officer, lottery special agent or lottery investigator, beverage enforcement agent, or watchman, or any member of the Parole Commission and any administrative aide or supervisor employed by the commission, or any personnel or representative of the Department of Law Enforcement, and tak[ing] upon himself or herself to act as such, or to require any other person to aid or assist him or her in a matter pertaining to the duty of any such officer....
[5] I discuss Schacht more fully in the following section.
[6] As explained previously, the government generally authorizes only governmental agents to wear its uniform.
[7] See Terry v. Ohio, 392 U.S. 1, 30-31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (permitting law enforcement officers to "stop and frisk" citizens when they have a "reasonable suspicion" that a crime may have occurred).